# ORIGINAL

1  LEONARDO M. RAPADAS
   United States Attorney
2  MIKEL W. SCHWAB
   Assistant U.S. Attorney
3  Suite 500, Sirena Plaza
   108 Hernan Cortez
4  Hagåtña, Guam 96910
   Telephone: (671) 472-7332
5  Fax: (671) 472-7215

6  Attorneys for the United States of America

**FILED**

DISTRICT COURT OF GUAM

APR 21 2006 ฟ๛

MARY L.M. MORAN
CLERK OF COURT

7
8          IN THE UNITED STATES DISTRICT COURT
9          FOR THE TERRITORY OF GUAM

10

11  VIRGIL M. LORENZO,                    )    CIVIL CASE  NO. 05-00035
                                          )
12                        Plaintiff,      )
                                          )    **DEFENDANT'S MOTION TO DISMISS;**
13          vs.                           )    **and OBJECTION TO THE IFP**
                                          )
    DONALD RUMSFELD,                      )
14                                        )
                          Defendant.      )
15  ──────────────────────────────────── )

16

17          COMES now the Defendant, Donald Rumsfeld, and moves to dismiss Plaintiff's

18  complaint and to object to his Application to Proceed Without Prepayment of Fees and Affidavit

19  (hereinafter "in forma pauperis" or "IFP petition").

20          First, Defendant moves to dismiss the complaint under Federal Rules of Civil Procedure

21  12(b)(1) and (b)(3).  Congress has waived sovereign immunity for suits filed under Title VII of

22  the Civil Rights Act of 1964, as amended, but only if the specific jurisdictional conditions for

23  suit are satisfied.  Section 2000e(f)(3) of title 42 imposes specific limits upon where

24  discrimination complaints such as that alleged by the Plaintiff may be heard.  Under this statute,

25  Plaintiffs claims may be heard only in the United States District Court for the Eastern District of

26  Virginia (USDC ED VA).  Accordingly, Plaintiffs claims must either be dismissed; or

27  alternatively, transferred to the USDC ED VA.  The Plaintiff has informed the Court that he had

28  attempted to file the same Complaint in San Diego, California, but was advised that Guam was

1   the nearest location to Okinawa, Japan, where the Plaintiff was seeking employment. He was

2   never employed on Guam and never sought employment on Guam. The records that would be

3   relevant to any such challenge to the decision not to hire Plaintiff would not be located on Guam.

4

5   Second, Defendant moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(4) for lack

6   of personal jurisdiction over the Defendant. Plaintiff initially filed his complaint with the Office

7   of the Clerk for the District of Guam on November 21, 2005. However, Plaintiff failed to serve

8   either the Attorney General or the Department of Defense in a timely manner as required by

9   Fed.R.Civ.P. 4. On March 24, 2005, the Department of Defense Education Activity (DoDEA)

10  received a copy of Plaintiff's Complaint, a Scheduling Order, a Return of Service dated 3/9/06,

11  and a Summons. (Tab A)  However, Plaintiff has failed to serve the Secretary of Defense by

12  delivering a copy of the summons and complaint to the DoD General Counsel in accordance with

13  32 CFR part 257.5(a). (Tab B)    Plaintiff has failed to demonstrate any justification approaching

14  excusable neglect for his failure to properly serve all parties.  Accordingly, the complaint should

15  be dismissed for lack of personal jurisdiction.

16

17                       **FACTUAL BACKGROUND**

18        The Department of Defense Education Activity (DoDEA) is a field activity of the Office

19  of the Secretary of Defense. It consists of the Department of Defense Dependents Schools

20  (DoDDS), serving Department of Defense (DoD) dependents overseas, and the Domestic

21  Dependent Elementary and Secondary Schools (DDESS), serving children residing on certain

22  military installations in the U.S. See 20 U.S.C. 921-932; 10 USC 2164; and DoD Directive

23  1342.20. (Tab C).   The matters in this case involve DoDDS.

24        The Headquarters for DoDEA is located in Arlington, Virginia.  All employee personnel

25  records are maintained and administered in the DoDEA Headquarters. (Tab D)

26        DoDDS employs and pays teachers under the authority of 20 U.S.C. 901-907.  Pay is set

27  in pay bands depending on education and experience by an annual survey that averages the pay of

28  similarly banded teachers at the hundred largest public school systems in the United States.  20

- 2 -

U.S.C. § 902-3. Teachers recruited in the United States, referred to as CONUS hires, receive overseas allowances in addition to pay, including the housing allowance and the post allowance. The amount of the housing allowance is dependent on the presence of family members. Department of State Standardized Regulation (DSSR), sections 130, 220, 720 at http://www.state.gov/. (Consult DSSR and Rates). Teachers hired overseas are not eligible for allowances in addition to pay.

On November 21, 2005, Plaintiff filed a complaint purporting to allege employment discrimination, along with an IFP petition. He filed these documents with the Clerk for the District of Guam on November 21, 2005. Service of the Complaint and a Summons was not timely accomplished on the Secretary of Defense or the Attorney General. Federal Rules of Civil Procedure (Fed.R.Civ.P.) Rule 4. At the Scheduling Hearing before this Court, Plaintiff was able to produce documentation that he had mailed documents just prior to the Hearing, well beyond the 120 days.

On March 24, 2006, the Agency Representative for the Department of Defense Dependents Schools in Equal Employment Opportunity Commission proceedings involving the Plaintiff, received a copy of the Complaint and a summons. The Plaintiff filed the same documents with the U.S. Attorney for the District of Guam. The DoD General Counsel is the non-delegable designated agent for service for suits filed against the Secretary of Defense. 32 C.F.R. 257.5(a). The Plaintiff has failed to serve the Secretary of Defense in a timely manner by delivering a complaint and summons to the General Counsel for the Department of Defense. Neither the Department of Justice nor the Department of Defense have been served with the IFP petition, although Plaintiff's mail receipts brought to the Scheduling Hearing demonstrate a recent, untimely, attempt to do so.

The early history of this case goes back to December of 2001. On or about December 18, 2001, the Plaintiff filed an administrative complaint of employment discrimination (non-selection) with the Equal Employment Opportunity Office of the DoD Education Activity (DoDEA). He alleged discrimination based on race (Filipino, Asian), national origin (Filipino), age (DOB: 02/23/45) and retaliation (prior EEO Complaint activity January 5, 1995) when he

- 3 -

was not selected in December 2001 for a vacant Spanish Teacher position, and for another nonselection, not here in issue. On October 27, 2004, An EEOC Administrative Judge (AJ) summarily dismissed the Plaintiff's Administrative complaints. (Tab E)  The AJ's summary judgment found that there were no material issues of fact. The AJ adopted in full the Agency's recitation of the undisputed material facts and the Agency's legal analysis, as set forth in the Agency's Motion for Decision Without A Hearing.

The AJ specifically found (footnote 2 at pp. 6-7):

> Viewing this matter as a non-selection case, complainant's claims with respect to 2000 selection decisions are untimely. 29 CFR § 1614.105 requires job applicants to initiate contact with an EEO Counselor within 45 days of the matter alleged to be discriminatory... This limitation period is triggered when a complainant "reasonably" should have suspected discrimination....In this case, therefore, complainant's claim with respect to 2000 selection decisions fail the "reasonable suspicion" test and no evidence has been offered, and the record contains no evidence, indicating any reasonable justification to explain complainant's dilatory response.

Nonetheless, the AJ alternatively analyzed Complainant's claim as if it were timely filed, and dismissed it because the Complainant was unqualified to be considered for the Spanish Teacher (and other) positions for which he applied:

> [H]is teaching certification was not current; he lacked sufficient credits of the nature and type necessary to meet the minimum requirements to teach the subjects in question; ... he was outside the relevant pool for consideration, being a "local" rather than a Continental U.S. (CONUS) applicant; ...he failed to properly complete his application; ... he did not include certain teaching disciplines in his application for which he sought consideration; ... he did not properly identify schools where he sought consideration; ...he did not have the requisite years of experience, National Board certification and did not meet certain special agency requirements. It is also not disputed that all relevant criteria, qualifications and experience requirements at issue were job related, neutral and nondiscriminatory.

> ...[T]he undisputed evidence of record reflects that at the time of the selection decision in 2000, complainant had not completed 30 hours of course work in "Spanish," a prerequisite to his eligibility to teach this subject in the agency's schools.

The AJ similarly found that his nonselection was not connected to Plaintiff's claim that he was harmed by a negative employment evaluation:

> ...there is no evidence that the negative recommendation referred to was a factor in this decision. .... Moreover, there is no evidence that any other applicants similarly situated to complainant but in a different protected status, were not similarly excluded from consideration because of similar defects and shortcomings in their applications and qualifications.

- 4 -

The AJ also concluded:

> Even of the selecting officials and personnel qualification examiners were later proven wrong with respect to complainant's lack of qualification, there is no evidence, and complainant has offered no evidence indication that they fabricated the reasons given for their findings of that these "lack of qualification" decisions were somehow contrived because of complainant's race, national origin, age, or EEO activity.

> With respect to complainant's claims [of] reprisal … the main EEO activity on which complainant relies for his claim of retaliation occurred seven years occurred seven years before …and involved a management official who has since retired… Such a nexus is too tenuous to support a reprisal-based claim.

> Thus, complainant is unable to establish all aspects of his complaint arising from the determination that he was not qualified to be included within relevant applicant pools, and, thus, could not be considered for teaching positions during the relevant time period. The agency has explained its decisions for legally sufficient reasons and there is not evidence of pretext. *Id.*

On November 12, 2004, the Agency issued a Final Order adopting the AJ's decision. On April 26, 2005, the EEOC affirmed the Agency's final order, "because the Administrative Judge's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred." The decision advised Plaintiff that he could file a request for reconsideration (RFR) within 30 days of receiving its appellate decision. Virgil M. Lorenzo v. Department of Defense, EEOC Appeal No. 01A51686, 4-26-05, www.EEOC.gov. (Federal Agency Decisions).

On June 5, 2004, Plaintiff filed a request for reconsideration (RFR) of the AJ decision. On August 2, 2005, the Commission dismissed the Plaintiff's RFR as untimely filed. It notified the Plaintiff that he had 90 calendar days from receipt of the dismissal of his RFR in which to file a civil action. Allowing ten days for mail to arrive at the Plaintiff's address (when the EEOC standard is five days), the Plaintiff would have received the Commissions dismissal of his RFR on or before August 13, 2005. Virgil M. Lorenzo v. Department of Defense, EEOC No. 05A50956, 07-28-05, www.EEOC.gov. (Federal Agency Decisions). Accordingly, Plaintiff had until November 2, 2005, to file his complaint with the Federal Court.

On November 7, 2005, the Plaintiff ostensibly signed the complaint (and the IFP petition). Plaintiff signed a declaration of service dated November 9, 2008, two days later, presumably indicating the mail date. Plaintiff filed his complaint and IFP petition with the Clerk,

- 5 -

U.S. District Court for Guam, but did not serve the Department of Justice or the Department of Defense. The Clerk stamped the documents as "filed" on November 21, 2005. The DoD General Counsel, the designated agent for service for actions against the Secretary of Defense, has never been served.

DoDEA Counsel advised the Plaintiff by email dated March 24, 2006, that he had not received a copy of the complaint and that the Plaintiff had an obligation to serve the Secretary of Defense. (Tab F)  Agency counsel was responding to an email from the Plaintiff asserting that he had served DoDEA counsel with a copy of the summons (but not the complaint).

Later in the day of March 24, 2006, Agency counsel received a copy of the Plaintiff's complaint, more than six months after the Plaintiff received the EEOC decision dismissing his RFR as untimely filed and providing the Plaintiff with that he had 90 days to file any such complaint.

Appellant's IFP petition fails to disclose his true financial status. Plaintiff's IFP petition recites certain income and asserts that there were no other sources of income. However, Plaintiff's employment application with the agency, extracted from the electronic file system on April 5, 2006, states that he has been employed by the University of Phoenix from 5-01-2005 to present. (Tab G)

Plaintiff's employment application is similarly in conflict with other documents related to his financial condition that are found in his personnel record. His employment application states that he is not on the orders of his sponsor (his wife, who he identifies as employed as a DoD Civilian). In his employment record is a DD Form 1614, "Request/Authorization for DoD Civilian Permanent Duty or Temporary Change of Station Travel" (TCS order) between Bechtel, Elementary School in Okinawa, Japan and the stateside home of record (or an alternate destination), dated April 10, 2003. (Tab H)  The TCS order, prepared for his sponsoring wife, reflects that dependent travel and per diem are authorized for the Plaintiff. Nothing in the Plaintiff's OPF indicates that his status as a dependent on his spouses's orders has changed.

Plaintiff's spouse is compensated for her position as a DoDEA Teacher at an annually adjusted rate established by averaging the pay of similarly situated teachers in the hundred largest

- 6 -

U.S. public school districts. 20 USC 901-907. On top of that salary, Plaintiff's wife receives certain overseas allowances, including a housing allowance. The Housing allowance for a DoDEA employee is enhanced by the presence of an overseas family member. Thus, she receives, to defray the rental expenses of living overseas with her husband, in Okinawa between $38,000 and $43,000 per year above her teacher pay (which is paid for 10 months work). (Tab I); See DSSR rates, www.DoS.gov (Department of State Standardized Regulation (DSSR) parts 130, 220, 170 and Rates). She also receives a post allowance. *Id.*

## ARGUMENT

### Congress Has Waived Sovereign Immunity For Plaintiff to Bring His Title VII Claims Only in the Eastern District of Virginia

Plaintiff alleges that venue is proper in this district "pursuant instruction of the Equal Employment Opportunity Commission." In fact, the EEO did not and cannot confer jurisdiction on the U.S. District Court of Guam. The specific statutory requirements of Title VII are that a suit alleging a violation of Title VII can be brought only in one of three places:

> In any judicial district in the state in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

See 42 SC § 2000e-5(f)(3).

Because this statute is part and parcel of the sovereign's waiver of immunity to suit for discrimination claims, it is jurisdictional in nature and cannot be waived. See Smith v. United States, 507 .S. 197 at 202 (1993). Insofar as Title VII states that "[t]he provisions of section 2000e-5(f) through )k) of this title, as applicable, shall govern" discrimination actions, strict compliance with its terms is mandatory. 42 SC § 2000e-16d (emphasis added). Johnson v. Payless Drugstores, Northwest Inc., 950 F.2d, 586 (9th Cir. (Cal), 1991)(*per curriam*); Bolar v. Frank, 938 F.2d 377, 379 (2nd Cir. 1991); Spencer v. Rumsfeld, 209 F. Supp. 2d 15 (D.D.C. 2002); Foxx v. Dalton, 46 F. Supp 2d 1268, 1275 (M.D. Fla. 1999).

- 7 -

Moreover, the federal courts repeatedly hold that this specific statute preempts all other more general provisions that may apply. <u>Johnson v. Payless</u>, *supra*; <u>Pierce v. Shorty Smalls of Branson, Inc.</u>, 137 F. 3d 1190, 1191 (10th Cir. 1998); <u>Bolar</u>, *supra*; <u>Stebbins v. State Farm Mutual Automobile Ins., Co.</u>, 413 F.2d 1100, 1102 (D.C. Cir. 1969). Indeed, section 1391 narrowly governs only "except as otherwise provided by law." 28 U.S.C. § 1391(b). Plainly, Title VII provides the necessary exception to section 1391's general grant.

This action must be heard, if at all, in the Eastern District of Virginia. The complaint alleges that the unlawful employment practice took place when the Plaintiff "was not selected to teach Spanish at Kadena High School, Okinawa, Japan." To the extent that the Plaintiff alleges that the unlawful employment action occurred in Okinawa, Japan, that locale is not a "state" within the meaning of 42 U.S.C. § 2000e-5(f)(3), conferring venue on the federal court "within the state…." Furthermore, the Plaintiff makes no claim that he would have been employed in a state within a federal court district, because he alleges that his employment would have occurred in Okinawa, Japan.

Furthermore, as noted in the attached affidavit, Arlington, VA is where the DoDEA headquarters is located and where the employment records of DoDEA personnel are maintained and administered. Accordingly, the only proper venue for the Plaintiff's discrimination claims is in the U.S. District Court for the Eastern District of Virginia. This Court should therefore, dismiss Plaintiff's claim for improper venue. <u>Johnson v. Payless</u>, *supra*; See 28 .U.S.C. § 1406(a) (a court "shall dismiss" a suit brought in the wrong judicial division or district.).

Although the United States would strongly advocate that the case be dismissed, there is case law that would allow the Court, in its discretion, to transfer the matter to the Eastern District of Virginia under 28 U.S.C. § 1404. See <u>Johnson v. Payless</u>, *supra*; <u>Ross v. Buckeye Cellulose Corp.</u>, 980 F.2d 648, 654-55 (11th Cir. 1993)( affirming transfer of Title VII case under § 1404). While a plaintiff's choice of venue is ordinarily given deference, this deference is "greatly diminished when the activities have little, if any connection with the chosen forum." <u>Consolidated Metal Products, Inc., v. American Petroleum Institute</u>, 569 F. Supp. 773, 775 (D.D.C. 1983); see also <u>Stebbins</u>, *supra,* 413 F. 2d at 1102-3; <u>EEOC v. Parish Water Works Co.</u>,

- 8 -

Inc., 415 F. Supp. 124, 125-6 (E.D. La 1976)(Congress did not intend to give plaintiffs absolute control over venue questions in Title VII cases): Dubnick v. Firestone Tire and Rubber, Co., 355 F. Supp 138 (E.D.N.Y. 1973). Here, the alleged acts have no connection with this district whatsoever.

In Foxx, *supra*, the court considered venue sought by a plaintiff alleging discrimination against the Navy while in its employ as a computer programmer in Panama. The Court applied section 2000e-(f)(3) and noted that there was no district court in Panama that could adjudicate the plaintiff's claims where the alleged employment practice took place or where the plaintiff would have worked but for the alleged employment practices. 46 F. Supp.2d at 1276. The Court concluded that transfer to the Eastern District of Virginia, where the Navy had its principal office, was appropriate. Should this Court decide that a transfer, rather than a dismissal, is appropriate, the Court may find counsel in the Foxx decision.

### The Court Should Dismiss the Entire Case for Lack of Personal Jurisdiction

The Court lacks personal jurisdiction over the defendant. On its face, Fed.R.Civ.P. 4(1) requires a plaintiff suing the United States or its agencies to serve (1) the United States Attorney, and (2) the Attorney General of the United States, (3) and the officer or agency names in the complaint, before a Court may exercise personal jurisdiction. Fed.R.Civ.P. 4(m) requires that the action be dismissed if service is not perfected within 120 days or within a time period specified by the Court. Over six months has passed since the Plaintiff was informed of the time lines for filing a complaint in the federal courts. More than a month has passed since the Agency advised the Plaintiff that he had a duty to serve the Secretary of Defense and Plaintiff has yet to serve properly the Secretary of Defense, as set forth in 32 CFR part 257.5(a).

Rule 4 requires that "[a] summons shall be served together with a copy of the complaint. Fed. Rule Civ. P. 4(c)(1). Departing from this requirement in any material way warrants dismissal. See Carini v. Royal Carribean Cruise Line, Inc., 959 F2d 1344, 1345-46 (5th Cir. 1992) (service of summons without complaint held ineffective); Davis v. Belk-Hudson Co, 173 F.R.D. 323, 325 (M.D. Ga)(same), aff'd without opinion, 136 F.3d 142 (11th Cir. 1998); Nordic

- 9 -

Bank PLC v. Trend Group, Ltd., 619 F. supp. 542, 564 (S.D. N.Y. 1985) (action dismissed for service of superceded complaint). An unfilled amended complaint is merely "a scrap of paper" for service purposes, and is insufficient to invoke the Court's personal jurisdiction over the defendant. See Phillips v. Murchison, 194 F. Supp. 620, 622 (S.D.N.Y. 1961)(service of superceded complaint).

Plaintiff recognized at some point that his service was defective and he filed additional copies of his complaint and a summons (separately) with the DoDEA Agency Representative in his administrative EEO Complaint, and with the Assistant U.S. Attorney in Guam. However, his attempts to correct his filing were neither timely nor compliant with the requirements of Fed.R.Civ.P. 4 and 32 C.F.R. part 275.5(a). It is clear that the filing of an amended complaint does not provide a plaintiff with additional time for service of the pleading under Rule 4(m). See Wright and Miller, Federal Practice and Procedure, § 1137 (2nd ed. 1980).

Additionally, as Rule 4(b) itself makes plain, a summons may issue only "[u]pon or after [the]filing [of] the complaint." Only then may the clerk "sign, seal and issue it to the plaintiff for service on the defendant." Id. Accordingly, to fully comply with these rules, the Plaintiff should have had another summons issued by the Clerk (he did) and then served that summons with a copy of the first amended complaint on all parties. There has been no service of either the summons or the amended complaint on the Secretary of Defense.

Furthermore, the Plaintiff has failed to cure the defect in service upon either the Attorney General and United States Attorney and the Secretary of Defense in November, 2005, or subsequently, or to offer any good cause as to why the Court should grant him additional time to complete service.

A plaintiff seeking an extension of a service deadline bears a heavy burden of proof. Doe v. Special Investigations Agency, Inc., Case No. 90-1762, 1990 WL 131360 *1 (E.D. Pa. September 12, 1990). This Plaintiff has shown no good cause for an extension and none exists. "Good cause" for purposes of an extension of the Rule 4(m) deadline, or the deadline established by the EEOC's order dismissing his appeal, "only when some outside factor such as reliance on

- 10 -

faulty advice, rather than inadvertence or negligence, prevented service." <u>Prisco v. Frank</u>, 929 F.2d 603, 604 (11th Cir. 1991)(Former Rule 4(j).

Nor is this a case where "special circumstances" might apply that would justify and extension without consideration of "good cause." <u>Cf</u>. <u>Horencamp v. Van Winkle & Co., Inc.</u>, 402 F. 3d 1129, at 1132 (11th Cir. 2005). Although Plaintiff is not an attorney nor is he represented by counsel, he is well experienced and familiar with EEOC administrative procedure and filing deadlines for court, as evidenced by both is current and former EEO complaints. See <u>Virgil Lorenzo v. Department of Defense</u>, Appeal No. 05A00118 (April 26, 2000; <u>Virgil Lorenzo v. Cohen, Secretary of Defense</u>, Appeal No. 01975582 (September 03, 1999). Thus, adherence to rules and compliance with filing deadlines is not a new matter for the Plaintiff. Accordingly, the Court should dismiss the Plaintiff's complaint for failure of personal jurisdiction.

### Objection to the Plaintiff's IFP Petition

The United States objects to the Plaintiff's application to proceed without payment of fees because Plaintiff is not without means. Plaintiff failed to identify in his affidavit in support of his IFP Petition that he was in the employ of the University of Phoenix, or that he was residing overseas with a spouse who was compensated as well as any teacher in the public schools systems of the United States, and who, in addition received free housing for herself and her husband, who, contrary to his representation to this Court, is on orders of his wife. Tab H. Moreover, Plaintiff's complaint, on its face, is without merit and does not deserve a day in court. To the extent that he asserts a *prima facie* claim of discrimination, he fails to provide sufficient facts on which to evaluate and respond to his claim. To the extent that his complaint is an extension of his rights to file a claim in Federal Court that has been previously heard by the EEOC, and that he has exhausted his administrative remedies, he fails to so allege. Even were he to have so alleged, the opinion of the AJ in the underlying EEO case so thoroughly establishes that the Plaintiff, as an EEO complainant, is that no facts were presented from which the Appellant can prove that he was a qualified applicant for the Spanish position at issue in his complaint. Furthermore, the administrative record establishes the absence of any evidence

- 11 -

demonstrating that the recommendation the Plaintiff believes was improper was in any way related to his non-selection.  Furthermore, the Plaintiff has filed his case late and before the wrong court.  In short, there is no public interest in this case proceeding to trial in this Court at taxpayer expense.  Accordingly, the United States objects to the Plaintiff's IFP petition.

## CONCLUSION

For all the above reasons, the United States respectfully moves this Court to Dismiss the Complaint, with both parties to bear their costs and fees.

Respectfully submitted this 20th day of April, 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the NMI

By: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

- 12 -

# UNITED STATES DISTRICT COURT

## District of Guam

Virgil M. Lorenzo )     SUMMONS IN A CIVIL CASE
            Plaintiff )
                      )
Vs                    )     CASE NO. **05-00035**
                      )
Donald Rumsfeld,      )
Secretary, Department of Defense )
            Respondent )
                      )
_____ )



To:
Robert P. Terzian, Agency Representative
Department of Defense Dependent Schools
4040 North Fairfax Drive
Arlington, VA 22203-1635

YOU ARE HEREBY SUMMONED and required to submit on PLAINTIFF at the

address PSC 559 BOX 5288, FPO AP 96377, an answer to the complaint which is served

on you with this summons within _60_ days after service of this summons on you,

exclusive of the day of service.  If you fail to do so, judgement by default will be taken

against you for the relief demanded on the complaint.  Any answer that you serve on the

parties of this action must be filed with the Clerk of this Court within a reasonable

amount of time after service.

**Mary L. M. Moran**
_____          FEB 2 3 2006
CLERK                              _____
                    DATE
(By) DEPUTY CLERK

**ORIGINAL**

# RETURN OF SERVICE

Service of the Summons and Complaint was made by me.  DATE _3/09/06_

NAME OF SERVER (*PRINT*)  TITLE

_VIRGIL M. LORENZO, PRO-SE_

Check one box to indicate method of service.

[ ] Served personally upon the defendant.  Place where served_____

[ ] Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left_____

**RECEIVED**

MAR 24 2006

**Office of General Counsel**

[ ] Returned unexecuted:_____

[X] Other.  Specify: _CERTIFIED U.S. MAIL, RETURN RECEIPT_

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information in the Return of Service and Statement of Service Fees are true and correct.

Executed on _3/9/06_
Date

_____
Signature of Server

1     VIRGIL M. LORENZO

2     PSC 559 BOX 5288

3     FPO AP 96377

**FILED**

DISTRICT COURT OF GUAM

NOV 21 2005 ⫯ρ

MARY L.M. MORAN
CLERK OF COURT   (1)

4

5

6     **RECEIVED**

7     MAR 24 2006

8     Office of General Counsel    DISTRICT COURT OF GUAM

9     TERRITORY OF GUAM

10

11     VIRGIL M. LORENZO         )     cv- **05-00035**

12         PLAINTIFF         )

13     VS                     )       COMPLAINT

14     DONALD RUMSFELD       )

15         DEFENDANT       )

16 _____)

17                       JURISDICTION

18     Per instruction of the Equal Employment Opportunity Commission, EEOC Docket 05A50956, this

19     case is referred to the Guam U.S. District Court for further consideration.

20                       COMPLAINT

21     In December 2000, I was not selected to teach Spanish at Kadena High School, Okinawa, Japan.

22     Then I discovered that on my application file a principal wrote: NOT RECOMMENDED FOR

23     REHIRE. He never was my principal. I allege race and age discrimination and reprisal.

24                       DEMAND

25     Relief in the form of a teaching position retroactive from December, 2000, and exemplary

26     damages of $950,000.

27

28                                Virgil M. Lorenzo

                              Tel: 81 98 965 7813

# DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

Virgil M. Lorenzo,

        Plaintiff,

    vs.

Donald Rumsfield,

        Defendant.

Civil Case No. 1:05-cv-00035

**SCHEDULING NOTICE**



RECEIVED
MAR 2 4 2006
Office of General Counsel

Virgil M. Lorenzo
PSC 559 Box 5288
FPO AP 96377

---

The Local Rules establish procedures for complying with Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure. Counsel should study the Local Rules before attempting to process cases in this Court.

Pursuant to Local Rules 16.1 and 16.2, it is hereby ORDERED that:

1. Counsel of record and all pro se litigants that have appeared in the case must meet and confer, within fifteen (15) days after receipt of this Notice, but no later than sixty (60) days after the filing of the complaint, prior to commencing discovery.

2. A proposed Scheduling Order and a proposed Discovery Plan shall be lodged on or before **04/04/2006**. Careful and immediate attention should be given to the directions in Local Rules 16.1 and 16.2 to ensure complete and timely compliance with Federal Rules 16(b) and 26(f), and the Local Rules.

3. Counsel for the plaintiff, or if the plaintiff is pro se, then the pro se plaintiff, must take the lead in the preparation of the Scheduling Order. If a defendant is not contacted by a pro se plaintiff within the required time frame, the defendant's counsel shall contact the pro se plaintiff and arrange a meeting to comply with this Rule in the appropriate time frame. The failure of a party or its counsel to participate in good faith in the framing of a Scheduling Order may result in the imposition of sanctions.

4. Counsel of record and all pro se litigants that have appeared in the case are jointly responsible for submitting a Proposed Discovery Plan to the Court.

5. A Scheduling Conference shall be held on **Tuesday, April 11, 2006 at 09:30 AM in the 3rd Floor Chambers**.

6. Counsel are reminded that:
    a) The filing of motions does not postpone discovery.
    b) Local Rule 37.1 governs discovery disputes and motions.
    c) The number and form of interrogatories are governed by Local Rule 33.1.
    d) Discovery documents and certificates of service shall not be filed with the Clerk until there is a proceeding in which the document or proof of service is in issue.

Dated:   February 2, 2006

                            **/s/ Mary L.M. Moran**
                            Clerk of Court



RECEIVED
MAR 2 4 2006
Office of General Counsel

March 17, 2006



RECEIVED

MAR 24 2006

Office of General Counsel

Robert Terzian, Attorney
Department of Defense Education Activity
4040 N Fairfax Drive
Arlington, VA 22203-1635

Mr. Terzian:

Enclosed please find a copy of my complaint filed at the U.S. District Court of Guam
and the summons, the original of which was sent to you on March 9, 2006. Since we
have communicated in the past 20 months by phone and Email over this issue, I
believe that we have satisfied the local rule of a pre-trial meeting. Our next meeting
then shall be at the scheduling set by the court on April 11, 2006 at 09:30.

Your kind attention is very much appreciated.

Respectfully,

Virgil M. Lorenzo, pro se
PSC 559 BOX 5288
FPO AP 96377
Tel. 81 98 965 7813
Email: vmlorenzo@email.uophx.edu


cc:

Attorney General Alberto Gonzales
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001


Leonardo M. Rapadas, US Attorney
Sirena Plaza, 108 Hernan Cortez,
Suite 500, Hagatna 96910


Mary L. Moran
Clerk, United States District Court, District of Guam
4th Floor, US Courthouse
620 West Soledad Ave
Hagatna, Guam 96910





LORENZO
559 Box 588
AP 96877



CERTIFIED MAIL

7002 1000 0005 4362 0301



MAR 24 2006

22203

Office of General Counsel

U.S. POSTAGE
PAID
FPO/AP
96877
MAR 20, '06
AMOUNT
$4.88
00130158-04

RETURN
RECEIPT
REQUESTED

22203#1613

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| Virgil M. Lorenzo | ) | |
| | ) | |
| Plaintiff | ) | CV-05-0035 |
| | ) | |
| vs | ) | |
| | ) | |
| Donald Rumsfeld | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DECLARATION OF MICHAEL E. REHEUSER

1.      I am an Associate Deputy General Counsel (Legal Counsel) of the United States Department of Defense ("DoD") located in Washington, D.C. I have held this position since August 22, 2005. My office has been designated to act as agent for service of process in matters concerning the Secretary of Defense in his official capacity and the Office of the Secretary of Defense. My office receives subpoenas, summonses and other documents in cases in litigation, makes an entry recording the receipt of the documents in a computer tracking system and makes a recommendation as to how each should be handled. I, or another attorney in my office, then directs the document to the appropriate responsible official for action. The disposition of the matter is also recorded in the computer tracking system.

2.      The statements in this declaration are based upon my personal knowledge and upon my review of information available to me in my official capacity.

3.    Counsel for the Department of Defense Education Agency informed me that a question had arisen whether the Department of Defense had been served with a summons and complaint by the plaintiff under Rule 4 of the Federal Rules of Civil Procedure. My office has conducted a search of the computer record system that we use to track receipt of documents of this nature.

4. No record of receipt of summons and complaint served by the plaintiff in a lawsuit against the Secretary of Defense was located under the party name <u>Virgil M. Lorenzo v. Donald Rumsfeld, Secretary of Defense</u>, under Civil Action No. CV-05-00035 in the U.S. District Court for the Territory of Guam.

In accordance with 28 U.S.C. 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my belief.

Date: 3/8/06

Michael E. Reheuser



# Department of Defense
# DIRECTIVE

**NUMBER** 1342.20
November 28, 2005

DA&M

SUBJECT: Department of Defense Education Activity (DoDEA)

References: (a) Sections 113,191 and 2164 of title 10, United States Code
    (b) Sections 921-932 of title 20, United States Code
    (c) DoD Directive 1342.20, "Department of Defense Education Activity (DoDEA)," October 13, 1992 (hereby canceled)
    (d) DoD Directive 1342.6, "Department of Defense Dependents Schools (DoDDS)," October 13, 1992 (hereby canceled)
    (e) through (q), see enclosure 1

## 1. REISSUANCE AND PURPOSE

Under the authority vested in the Secretary of Defense by references (a) and (b), this Directive:

 1.1. Reissues reference (c), cancels references (d) and (e), and assigns responsibilities, functions, relationships, and authorities previously assigned to the Department of Defense Domestic Dependent Elementary and Secondary Schools (DDESS) and the Department of Defense Dependents Schools (DoDDS) to the Department of Defense Education Activity (DoDEA), under the Under Secretary of Defense for Personnel and Readiness (USD(P&R)).

 1.2. Authorizes the publication of DoD 1342.20-M (reference (f)), consistent with DoD 5025.1-M (reference (g)).

## 2. APPLICABILITY AND SCOPE

This Directive applies to:

 2.1. The Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities in the Department of Defense (hereafter referred to collectively as the "DoD Components"). The term "Armed Forces," as used herein, refers to the Army, the Navy, the Air Force, the Marine Corps, and the Coast Guard.

2.2. The educational program (preschool through grade 12) established by the Secretary of Defense in overseas areas and in the United States (including its territories, commonwealths, and possessions).

2.3. Members of the Advisory Council on Dependents' Education, the Dependents Education Council, DoD Advisory Panel (DoD-AP) on Early Intervention and Special Education, all other educational advisory committees and councils, and school boards of DoDEA Schools.

## 3. MISSION

The mission of DoDEA is to provide an exemplary education by efficiently and effectively planning, directing, and overseeing the management, operation, and administration of the DDESS and DoDDS from preschool through grade 12 to eligible dependents of:

3.1. Members of the Armed Forces.

3.2. DoD appropriated fund (APF) and nonappropriated fund (NAF) civilian employees.

3.3. Non-DoD Federal Government civilian employees.

## 4. POLICY

It is DoD policy that DoDEA shall provide, in military communities worldwide, exemplary educational programs that inspire and prepare all students, including those with special needs, for success in a global environment. The focus of DoDEA will be on attaining the highest in student achievement; using performance-driven, efficient management systems; developing a motivated, high-performing, diverse workforce at every organizational level of DoDEA; and establishing a network of partnerships and alliances with such groups as parents, students, teachers, the military communities, local school systems, institutions of higher education, and professional associations.

## 5. ORGANIZATION AND MANAGEMENT

The DoDEA is established as a Field Activity of the Department of Defense under the Under Secretary of Defense for Personnel and Readiness, (USD(P&R)), operating under the authority, direction, and control of the Principal Deputy Under Secretary of Defense for Personnel and Readiness (PDUSD)(P&R)). It shall consist of:

5.1. A Director.

5.2. A Principal Deputy Director.

2

5.3. The DDESS, as authorized by 10 U.S.C. 2164 (reference (a)).

5.4. The Defense Dependents' Education System, as required by Sections 921-932 of reference (b).

5.5. Such additional subordinate organizational elements as are established by the Director, DoDEA, within resources assigned by the Secretary of Defense.

6. RESPONSIBILITIES AND FUNCTIONS

6.1. The Principal Deputy Under Secretary of Defense for Personnel and Readiness (PDUSD(P&R)), under the USD(P&R), shall:

6.1.1. Recommend policies and resources for the DoDEA to the USD(P&R) and the Secretary of Defense.

6.1.2. Establish a DoD-AP on Early Intervention and Special Education in accordance with DoD Directive 5105.4 and DoD Instruction 1342.12 (references (h) and (i)).

6.1.3. Establish a Dependents Education Council to provide a consultative relationship among the PDUSD(P&R); the Director, DoDEA; and the Commanders of Combatant Commands and major Military Service Commands on educational policy and matters related to facilities, logistics, and administrative support provided to DoDEA by the Armed Forces, in accordance with DoD Directive 5105.18 (reference (j)).

6.1.4. Exercise authority, direction, and control over the Director, DoDEA and facilitate interactions with the DoD Components..

6.2. The Director, DoDEA, under the PDUSD(P&R), shall:

6.2.1. Plan, manage, and direct DoDEA, its subordinate elements, and all assigned resources.

6.2.2. Serve as the principal staff advisor to the PDUSD(P&R) and the USD(P&R) on matters involving DoDEA.

6.2.3. Prescribe regulations, policy, technical guidance and procedures to carry out the functions required to operate DDESS and the Defense Dependents' Education System in accordance with Section 2164 of reference (a), and Sections 921 – 932 of reference (b), respectively.

6.2.4. Administer, implement, and evaluate such policy, technical guidance, and procedures that are required for the effective operation, administration, management, budgeting, facilities construction, and financing of DoDEA.

3

6.2.5. Provide programs for eligible dependents designed to meet the special needs of:

    6.2.5.1. Individuals in need of compensatory education.

    6.2.5.2. Individuals with an interest in vocational education.

    6.2.5.3. Gifted and talented individuals.

    6.2.5.4. Individuals of limited English-speaking ability.

    6.2.5.5. Children with disabilities.

6.2.6. Provide recommendations and support to the PDUSD(P&R) and USD(P&R) on the development and justification of school construction, modification, and/or repair projects included in annual military construction programs.

6.2.7. Enter into such agreements as are necessary with domestic and foreign school entities to ensure the delivery of educational services when the Director, DoDEA, determines under Section 926(b) of reference (b) that no overseas schools operated by the Department of Defense are reasonably available to deliver such services.

6.2.8. Establish and operate NAF instrumentalities in support of student activities that are not supported from APFs, in accordance with DoD Directive 1015.14 (reference (k)) and ensure that the use of NAF funds is reviewed in accordance with DoD Instruction 7600.6 (reference (l)).

6.2.9. Serve as the Executive Secretary of the Advisory Council on Dependents' Education in accordance with Section 929 of reference (b) and in accordance with reference (h).

6.2.10. Serve as the Executive Secretary of the Dependents Education Council authorized by this Directive.

6.2.11. Keep abreast of developments in the elementary, secondary, and higher education fields to ensure appropriate assimilation of new programs and technologies in DoD schools.

6.2.12. Maintain liaison and representation with professional educational associations or organizations or school districts as necessary and appropriate to accelerate the exchange of emerging opportunities, maintain currency in educational developments, ensure the proper accreditation of DoD schools, implement a structured program to ensure the smooth transition of military-connected students between DoD schools and non-DoD schools, and promote the advancement of educational goals and objectives.

6.2.13. When funds are available, provide the following:

    6.2.13.1. Extracurricular and co-curricular programs and activities to enrich the school environment and experience;

Case 1:05-cv-00035   Document 8-2   Filed 04/21/2006   Page 5 of 27

6.2.13.2. Support of student travel to compete in interscholastic programs and competitions;

6.2.13.3. Summer school programs; and

6.2.13.4. Developmental preschool programs, if such programs are not otherwise available.

6.2.14. Provide a free, appropriate public education in the least restrictive environment and related services for children, ages 3 through 21 years, with disabilities enrolled in the DoD school systems as specified in their Individualized Education Programs and in accordance with reference (i).

6.2.15. Establish education advisory committees and school boards in accordance with DoD Instruction 1342.15 and DoD Instruction 1342.25 (references (m) and (n)), respectively.

6.2.16. Ensure DoDEA programs and activities are designed and managed to improve standards of performance, economy, and efficiency and demonstrate attention to the requirements of DoDEA's organizational customers, both internal and external to the Department of Defense.

6.2.17. Perform other duties as assigned by the Secretary of Defense, the USD(P&R), and the PDUSD(P&R).

6.3. The <u>Secretaries of the Military Departments</u> shall provide facilities, logistics, and administrative support, as required for the effective operation of DoDEA. Reimbursement for goods and services shall be made in accordance with DoD Instruction 4000.19 and DoD Directive 1400.16 (references (o) and (p)), respectively. However, reimbursement shall not be required for expendable medical supplies and support provided to DoDEA, but shall be furnished and funded by the supporting activity.

7. <u>RELATIONSHIPS</u>

7.1. In the performance of assigned duties, the Director, DoDEA, shall:

7.1.1. Report directly to the PDUSD(P&R).

7.1.2. Keep the DoD Components fully informed concerning DoDEA activities for which they have collateral or related functions.

7.1.3. Use established facilities and services in the Department of Defense and other Federal, State, and Local Government agencies and private organizations, as authorized and appropriate, to achieve a balance of modernization, efficiency, and economy of operations.

5

7.1.4. Consult and coordinate with other Federal, State, and Local Government agencies, academia, and other private organizations, as appropriate, to exchange information and advice on programs in their fields of responsibility.

7.2. The Heads of the DoD Components shall coordinate with the Director, DoDEA, as appropriate, on matters relating to DoDEA operations, functions, and responsibilities.

## 8. AUTHORITIES

The Director, DoDEA, is hereby delegated authority to:

8.1. Communicate directly with the Heads of the DoD Components, as necessary, to carry out assigned functions and responsibilities, including the transmission of requests for advice and assistance. Communications to the Military Departments shall be transmitted through the Secretaries of the Military Departments, their designees, or as otherwise provided in law or directed by the Secretary of Defense in other DoD issuances. Communications to the Commanders of the Combatant Commands shall be transmitted through the Chairman of the Joint Chiefs of Staff.

8.2. Communicate with other federal officials, including representatives of the legislative branch, state and local officials, members of the public, and representatives of foreign governments, as appropriate, in carrying out assigned functions.

8.3. Obtain reports and information, consistent with the policies and criteria of DoD Directive 8910.1 (reference (q)), as necessary, to carry out assigned functions.

8.4. Exercise the administrative authorities contained in enclosure 2.

## 9. ADMINISTRATION

The Director, DoDEA, shall be a civilian selected by the Secretary of Defense, based on recommendations by the USD(P&R).

10. <u>EFFECTIVE DATE</u>

This Directive is effective immediately.

Gordon England    *ACTING*

Enclosures - 2
    E1.  References, continued
    E2.  Delegations of Authority

7

## E1. ENCLOSURE 1

## REFERENCES, continued

(e) DoD Directive 1342.21, "Department of Defense Section 6 Schools," October 13, 1992 (hereby canceled)

(f) DoD 1342.6-M, "Administrative and Logistics Responsibilities for DoD Dependent Schools," August 11, 1995

(g) DoD 5025.1-M, "DoD Directives System Procedures," current edition

(h) DoD Directive 5105.4, "Department of Defense Federal Advisory Committee Management Program," February 10, 2003

(i) DoD Instruction 1342.12, "Provision of Early Intervention and Special Education Services to Eligible DoD Dependents," April 11, 2005

(j) DoD Directive 5105.18, "DoD Committee Management Program," February 8, 1999

(k) DoD Directive 1015.14, "Establishment, Management, and Control of Nonappropriated Fund Instrumentalities and Financial Management of Supporting Resources," July 16, 2003

(l) DoD Instruction 7600.6, "Audit of Nonappropriated Fund Instrumentalities and Related Activities," January 16, 2004

(m) DoD Instruction 1342.15, "Educational Advisory Committees and Councils," March 27, 1987

(n) DoD Instruction 1342.25, "School Boards for Department of Defense Domestic Dependent Elementary and Secondary Schools (DDESS)," October 30, 1996

(o) DoD Instruction 4000.19, "Interservice and Intragovernmental Support," August 9, 1995

(p) DoD Directive 1400.16, "Inter-departmental Civilian Personnel Administration Support," October 30, 1970, as amended

(q) DoD Directive 8910.1, "Management and Control of Information Requirements," June 11, 1993

Case 1:05-cv-00035    Document 8-2    Filed 04/21/2006    Page 9 of 27

## E2. ENCLOSURE 2

## DELEGATIONS OF AUTHORITY

E2.1.1. Under the authority vested in the Secretary of Defense, and subject to the authority, direction, and control of USD(P&R) and the PDUSD(P&R), and in accordance with DoD policies, DoD Directives, and DoD Instructions, the Director DoDEA, or in the absence of the Director, DoDEA, the Principal Deputy Director, DoDEA, is hereby delegated authority as required in the administration and operation of DoDEA to:

E2.1.1.1. Exercise the powers vested in the Secretary of Defense by 5 U.S.C. 301, 302(b), 3101, and 5101 on the employment, direction, and general administration of DoDEA civilian personnel.

E2.1.1.2. Fix rates of pay for overseas wage-rate employees exempted from the Classification Act of 1949 by 5 U.S.C. 5102 on the basis of rates established under the Federal Wage System. In fixing such rates, the Director of DoDEA shall follow the wage schedule established by the DoD Wage Fixing Authority.

E2.1.1.3. Administer oaths of office incident to entrance into the Executive Branch of the Federal Government or any other oath required by law in connection with employment therein, in accordance with 5 U.S.C. 2903, and designate in writing, as may be necessary, officers and employees of DoDEA to perform this function.

E2.1.1.4. Establish a DoDEA Incentive Awards Board and authorize cash awards to, and incur necessary expenses for the honorary recognition of, civilian employees of the Government whose suggestions, inventions, superior accomplishments, or other personal efforts, including special acts or services, benefit or affect the DoDEA or its subordinate activities, in accordance with 5 U.S.C. 4503, applicable OPM regulations, and DoD Directive 5120.15.

E2.1.1.5. Maintain an official seal and attest to the authority of official DoDEA records under the seal.

E2.1.1.6. Establish advisory committees and employ temporary or intermittent experts or consultants, as approved by the Secretary of Defense, for the performance of DoDEA functions consistent with 10 U.S.C. 173; 5 U.S.C. 3109(b); and DoD Directive 5105.4.

E2.1.1.7. Enforce regulatory procedures in accordance with Executive Order 10450, "Security Requirements for Government Employment," April 27, 1953; Executive Order 12333, "United States Intelligence Activities," December 4, 1981; Executive Order 12968, "Access to Classified Information," August 2, 1995; and DoD Directive 5200.2, as appropriate to:

E2.1.1.7.1. Designate any position in DoDEA as a "sensitive" position in accordance with procedures prescribed in DoD 5200.2-R.

Case 1:05-cv-00035   Document 8-2   Filed 04/21/2006   Page 10 of 27

E2.1.1.7.2. Authorize, in case of an emergency, the appointment of a person to a sensitive position in DoDEA for a limited period of time and for whom a full field investigation or other appropriate investigation, including the National Agency Check, has not been completed.

E2.1.1.7.3. Authorize the suspension, but not the termination, of the services of a DoDEA employee in the interest of national security.

E2.1.1.7.4. Initiate personnel security investigations and, if necessary in the interest of national security, suspend a security access to classified information for personnel assigned, detailed to, or employed by DoDEA. Any action under this paragraph shall be in accordance with procedures prescribed in DoD 5200.2-R.

E2.1.1.7.5. Grant interim clearances for Secret access to classified information when the requirements of DoD 5200.2-R have been met.

E2.1.1.7.6. Prescribe regulations, policy, technical guidance and procedures to carry out the functions required to operate DDESS and the Defense Dependents' Education System in accordance with 10 U.S.C. 2164 and 20 U.S.C. 921 – 932.

E2.1.1.8. Authorize and approve:

E2.1.1.8.1. Travel for DoDEA civilian employees in accordance with Joint Travel Regulations (JTR), Volume 2, "DoD Civilian Personnel," current edition.

E2.1.1.8.2. Temporary duty travel for military personnel assigned or detailed to the DoDEA in accordance with Joint Federal Travel Regulations, Volume 1, "Uniformed Service members," current edition.

E2.1.1.8.3. Invitational travel to non-DoD personnel whose consultative, advisory, or other highly specialized technical services are required in a capacity that is directly related to, or in connection with, DoDEA activities, in accordance with JTR, Volume 2.

E2.1.1.8.4. Overtime work for DoDEA civilian personnel in accordance with applicable law and regulation.

E2.1.1.9. Approve the expenditure of funds available for travel by military personnel assigned or detailed to DoDEA for expenses incident to attendance at meetings of technical, scientific, professional, or other similar organizations in such instances when the approval of the Secretary of Defense, or designee, is required by 37 U.S.C. 412 and 5 U.S.C. 4110 and 4111.

E2.1.1.10. Develop, establish, and maintain an active and continuing Records Management Program pursuant to 44 U.S.C. 3102 and DoD Directive 5015.2.

E2.1.1.11. Accept, hold, administer, and spend gifts, including any gift of an interest in real property, made on the condition that it be used in connection with the operation or administration of DoDEA, in accordance with 10 U.S.C. 2605.

E2.1.1.12. Authorize the publication of advertisements, notices, proposals, or other public periodicals, as required for the effective administration and operation of the DoDEA, consistent with 44 U.S.C. 3702.

E2.1.1.13. Establish and maintain, for the functions assigned, an appropriate publications system for the promulgation of Directives, Instructions, Publications, and reference documents, and changes thereto, according to the policies and procedures prescribed in DoD 5025.1-M.

E2.1.1.14. Enter into support and service agreements with the Military Departments; other DoD Components; or other Federal, State, and Local Government agencies and private organizations for the effective performance of DoDEA functions and responsibilities. Intragovernmental Transactions must be tracked in accordance with OMB M-03-01 dated October 4, 2002.

E2.1.1.15. Enter into and administer contracts, directly or through a Military Department, a DoD contract administration services component, or other Federal agency, as appropriate, for supplies, equipment, and services required to accomplish the mission of DoDEA. To the extent that any law or Executive order specifically limits the exercise of such authority to persons at the Secretarial level of a Military Department, such authority shall be exercised by the appropriate Under Secretary, Deputy Under Secretary, or Assistant Secretary of Defense.

E2.1.1.16. Approve waivers of indebtedness for DoDEA employees in accordance with 5 U.S.C. 5584.

E2.1.2. The Director, DoDEA, may redelegate these authorities, as appropriate, and in writing, except as otherwise specifically indicated above or as otherwise provided by law or regulation.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| Virgil M. Lorenzo | ) | |
| | ) | |
| Plaintiff | ) | CV-05-0035 |
| | ) | |
| vs. | ) | |
| | ) | |
| Donald Rumsfeld | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DECLARATION OF PAUL WOLFE

Pursuant to 28 U.S.C. § 1746, I, Paul Wolfe, do hereby state as follows:

1.  I am the Director of Human Resources for the Department of Defense Education Activity (DoDEA), located at the DoDEA Headquarters at 4040 N. Fairfax Drive, Arlington, Virginia 22203. DoDEA is a field activity of the Office of the Secretary of Defense and consists of the Department of Defense (DoD) Dependents Schools (DoDDS), operated in overseas area, and the DoD Domestic Elementary and Secondary Schools (DDESS), operated in the United States and its Territories. I am over 18 years of age and have personal knowledge of the matters pertaining to this declaration.

2.  As part of my duties, I am responsible for the maintenance of the official personnel records of all DoDEA employees, regardless of their assigned duty location. These records include the Agency's official records of applications for and related personnel actions concerning DoDDS professional educator (except substitute teacher) positions.

3.  The records described in paragraph 2, above, including those records pertaining to Mr. Virgil M. Lorenzo, are located and maintained by my staff in the DoDEA Headquarters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my belief.

Dated: 3/7/2006

_____
Paul Wolfe

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN FRANCISCO DISTRICT OFFICE
350 THE EMBARCADERO , SUITE 500
SAN FRANCISCO, CA  94105

Served
11-2

NOV  1 2004

COMPLAINT OF                          \

Virgil Lorenzo,                                              EEOC NO. 370-04-00264X

        Complainant,

                               AGENCY NO.  PEFY-02-06

v.

Donald Rumsfeld, Secretary,
U.S. Dept. of Defense,

                               **DECISION**

        Respondent Agency.
_____ /

COMPLAINANT'S REPRESENTATIVE:                    *Pro se*

AGENCY REPRESENTATIVE:                             Robert Terzian, Esq.

FEDERAL ADMINISTRATIVE JUDGE:                 Daniel E. Leach

REFERENCE CODES:                                         IR: Investigative Report
                                                                          AJE: Administrative Judge's
                                                                           Exhibit

1

## I. **INTRODUCTION**

The above matter was docketed and assigned to me on April 9 , 2004. By submission received September 23, 2004, the agency moved that I issue a Decision without a hearing pursuant to 29 CFR § 1614.109(g)(1). See, Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Administrative Judge's Exhibit (AJE): 1. The complainant responded by submission dated October 6, 2004. Anticipating the agency's motion, complainant's submission received September 7, 2004, also touches on the issues presented in the agency's motion and is included in its response. AJE: 2. The agency replied by submission dated October 20, 2004. AJE: 3. These exhibits are incorporated by reference herein.

After thoroughly reviewing the investigative file and the submissions of the parties, I have determined that the complaint should be resolved without a hearing because no genuine dispute of material fact or questions of credibility exists. Accordingly, the following constitutes my Decision without a hearing on the complaint of discrimination filed by Virgil Lorenzo against the United States Department of Defense.

## II. **PROCEDURAL CHRONOLOGY**

The complainant has timely complied with all procedural requirements of the Federal EEO complaint process and the agency requested the appointment of a Federal Administrative Judge. Therefore, I have jurisdiction to consider this matter and to issue a Decision herein pursuant to 29 C.F.R. § 1614.109(g).

## III. **ISSUES**

Does the record evidence, when considered in the light most favorable to the complainant,

2

demonstrate that he was not considered for selection to the positions of Spanish teacher in 2000 and Social Studies/English teacher in 2002 because of his race (Asian), national origin (Philippines), age (DOB 1945), and/or prior EEO activity?

## IV.    APPLICABLE LAW

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Title VII), prohibits discrimination in federal employment based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-16.

The Age Discrimination in Employment Act (ADEA) provides that all personnel decisions affecting federal employees who are at least forty (40) years of age shall be made free from discrimination based on age. 29 U.S.C. § 633a.

Pursuant to regulations of the Equal Employment Opportunity Commission, no person shall be subject to retaliation for opposing any practice made unlawful by the ADEA or for participating in any stage of administrative or judicial proceedings under that or related statutes. 29 C.F.R. 1614.101(b); Smith v. Secretary, Department of the Navy, 659 F.2d 1113 (D.C. Cir. 1981).

### Discrimination Cases/Order of Proof

In any judicial or administrative proceeding involving an allegation of discrimination, it is the burden of the complainant initially to establish that there is some substance to his claim. This means that the complainant must present evidence creating a prima facie inference which, if not rebutted, would permit a finding that unlawful discrimination had occurred. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Furnco Construction Co. v. Waters, 438 U.S. 567 (1978).

The complainant may establish a prima facie case of discriminatory job selection with

3

circumstantial evidence that raises an inference that the agency's selection decision was based on a proscribed factor, such as by showing that he is a member of a protected class, applied and was qualified for a vacant position, was not selected, and that the person selected was outside his protected class. McDonnell Douglas Corp. v. Green, supra; O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) (Title VII model of proof applies to ADEA cases).

To raise an inference of discriminatory retaliation, the complainant must show (1) participation in an activity protected under the Title VII, the ADEA or a related statute, (2) knowledge of that activity by the decision-maker, (3) an adverse action against the complainant, and (4) a causal connection between the protected activity and the agency's adverse action. A causal connection may be established by showing that the protected activity was followed closely by an adverse action, that the agency treated the employee differently from similarly situated employees who had not participated in EEO activity, or that the agency treated the complainant differently than it treated him before he engaged in the protected activity. Johnson v. Palma, 931 F.2d 203 (2d Cir. 1991); Cohen v. Fred Meyer, Inc., 686 F.2d 793 (9th Cir. 1982) (Title VII model of proof applies to claims of retaliation).

Once the complainant establishes a prima facie case, the agency has the burden of production to set forth clearly the reasons for its actions in not considering or selecting the complainant. The explanation provided must be legally sufficient to justify a judgment for the agency. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).

If the agency satisfies its burden of production, the complainant must demonstrate that the reason articulated is not the true reason and is a pretext for discrimination. The complainant,

4

however, has the ultimate burden of proving by a preponderance of the evidence that a factor made unlawful under the Title VII, the ADEA, or that reprisal, played a motivating role or made a difference in the adverse employment action. <u>McDonnell Douglas Corp. v. Green</u>, <u>supra</u>; <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993).

## ISSUANCE OF A DECISION WITHOUT A HEARING

The issuance of a Decision without a hearing is warranted if no genuine issues of material fact or questions of credibility exist when the evidence is viewed in the light most favorable to the complainant. 29 CFR § 1614.109(g); Rule 56, Fed.R.Civ.P. The complainant bears the burden of coming forward with sufficient evidence of every element that he must prove which must be evaluated in light of the proper standard of proof. <u>Celotex Corp. v. Catrett</u>, <u>supra</u>; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). In a discrimination or retaliation case alleging non-selection or non-consideration, the complainant bears the ultimate burden of proving discrimination or retaliation by a preponderance of the evidence. <u>McDonnell Douglas Corp v. Green</u>, <u>supra</u>. Subjective belief or speculation as to motive, intent, or pretext is not sufficient to satisfy the complainant's burden. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). A hearing is not warranted unless the complainant provides significant, probative evidence tending to support the complaint which is sufficient enough for the fact finder to conclude that, from this evidence, the disputed fact could reasonably be resolved in his favor. <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>. The complainant also cannot withstand summary disposition simply by expressing an intent to challenge the credibility of the agency's witnesses on cross-examination. <u>Lindahl v. Air France</u>, 930 F.2d 1434 (9th Cir. 1991).

5

# V.    ANALYSIS

Viewed in the light most favorable to complainant, the undisputed evidence of record, including all of the matters alleged in, and documented by, complainant's sworn statements and submissions, demonstrates that the matters complained of were not based on, or motivated by, complainant's race, national origin, age or prior EEO activity. In this regard, having found that the agency's motion and statement in support thereof including its attached exhibits, constitute an accurate and complete recitation of the undisputed material facts, and a comprehensive and correct legal analysis of all of the matters at issue, I hereby adopt the statement of undisputed facts contained in the agency's motion and supporting statement with attached exhibits. Furthermore, I adopt the legal analysis contained in the agency's motion and statement as my conclusions of law herein.[1] As noted above, these exhibits have been incorporated by reference herein.

Complainant's claims involve his not being included in a qualified applicant pool; i.e., a referral list from which selections were made for teaching positions during the period 2000 through 2002.[2] IR: Exs. A, B. Complainant alleges he first learned of these deficiencies and shortcomings

---

[1] The Supreme Court ruled in Anderson v. Bessemer City, 470 U.S. 564 (1985), that "when the trial judge adopts the proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." 470 U.S. 564, at 572 (1985).

[2] Viewing this matter as a non-selection case, complainant's claims with respect to 2000 selection decisions are untimely. 29 C.F.R. § 1614.105 requires employees and job applicants to initiate contact with an EEO Counselor within 45 days of the matter alleged to be discriminatory. The undisputed evidence of record reflects that complainant initiated EEO counselor contact in December of 2001, long after the 2000 selection processes were completed. Failure to select an applicant is a discrete and finite personnel event and is not actionable after the 45-day time period has elapsed even if relates to other, actionable claims. National Railroad Passenger Corp v. Morgan, 536 U.S. 101 (2002). This limitations period is triggered when a complainant "reasonably" should have suspected discrimination, and before all the facts that would have supported any claim had become apparent. Schermerhorn v. USPS, EEOC Request No.

6

in November of 2001. There is no evidence in the record before me indicating that in assessing qualification and application deficiencies, complainant was treated differently than similarly situated applicants for teaching positions who were of a different protected status. IR: Exs. A, B, F-1; AJE: 2.

The undisputed evidence of record reflects that at the time of the selection proceedings involving the positions at issue, complainant was not qualified pursuant to agency qualification and application procedures and was, thus, not considered. It is not disputed that beginning in 2000, school officials and administrators including the Principal of Kadena High School, Deborah Berry, after examining complainant's application, qualifications, experience and related factors found numerous deficiencies and shortcomings rendering complainant unqualified for consideration to fill the positions at issue and other vacant teaching positions in which complainant claims he was interested. AJE: 2. Nor is it disputed that complainant's lack of qualifications involved his failure to timely meet any one of a number of relevant criteria, including, *inter alia*, the fact that his teaching certification was not current; that he lacked sufficient credits of the nature and type necessary to meet the minimum requirements to teach the subjects in question; that he was outside the relevant pool for consideration, being a "local" applicant rather than a Continental U.S. ("CONUS") applicant; that he failed to properly complete his application; that he did not include certain teaching disciplines in his application for which he sought consideration; that he did not properly identify schools where he

---

05940729 (February 10, 1995). In this case, therefore, complainant's claim with respect to 2000 selection decisions fails the "reasonable suspicion" test and no evidence has been offered, and the record contains no evidence, indicating any reasonable justification to explain complainant's dilatory response. Nonetheless, the Decision herein will assume that complainant has perfected his claims in timely fashion and, indeed, in viewing his claim as a failure to qualify, it would appear to be timely. See, IR: Ex. B.

sought consideration; and that he did not have the requisite years of experience, National Board Certification and did not meet certain special agency requirements. It is also not disputed that all relevant criteria, qualification and experience requirements at issue were job related, neutral and non-discriminatory.[3] IR: Exs. A, B, F-1 through F-26; AJE: 1, 2, 3.

In response, complainant speculates that, notwithstanding his lack of qualifications and application shortcomings as noted above, the agency's failure to notify him of qualification changes after he initially applied and the existence of a notation in the agency records that he not be re-employed, constitute evidence of pretext. With respect to the issue of the agency's having "changed" its requirements, the undisputed evidence of record reflects that at the time of the selection decision in 2000, complainant had not completed 30 hours of course work in "Spanish," a prerequisite to his eligibility to teach this subject in the agency's schools. Complainant alleges that this was a change from previous qualification criteria requiring fewer credits, and speculates that the agency could have informed him of the change. However, complainant offers no evidence, and the record contains no evidence, indicating that other applicants similarly situated to complainant but of a different protected status, were given such special notice. I conclude, therefore, that the agency's failure to provide such notice to complainant in these circumstances does not constitute evidence of pretext. AJE: 1, 2, 3.

---

[3] Under relevant application procedures, all candidates were screened by personnel specialists who determined whether applicants met qualification and other prerequisites for teaching positions. In turn, the selecting official considered only those candidates deemed qualified and referred for consideration. Complainant does not allege, and there is no evidence of record indicating, that personnel specialists in this case subjected him to discrimination or retaliation in assessing his qualifications. It is complainant's contention that in certain instances, selecting officials could or should have circumvented the referral list, independently find him qualified and select him. AJE: 1, 2, 3.

8

Complainant's argument that a notice appearing in agency records which expressly recommended that the agency not re-employ him must have influenced the agency's adverse selection decisions at issue, is misplaced. IR: Ex. F-4. Complainant offers no evidence, and the record contains no evidence, indicating that any selecting official at any time was even aware of this negative recommendation. Complainant's qualifications and application deficiencies, including his failure to complete his application, simply precluded his consideration for these appointments to teaching positions in the first place and there is no evidence that the negative recommendation referred to was a factor in this decision. Indeed, there is no evidence, and complainant offers no evidence, indicating that the selection and qualification decisions of any of the officials involved were not as they stated and/or as they reasonably believed: That complainant was precluded from consideration because of his qualification and application defects and shortcomings discussed above. Moreover, there is no evidence that any other applicants similarly situated to complainant but of a different protected status, were not similarly excluded from consideration because of similar defects and shortcomings in their applications and qualifications.

Even if the selecting officials and personnel qualification examiners were later proven wrong with respect to complainant's lack of qualifications, there is no evidence, and complainant has offered no evidence, indicating that they fabricated the reasons given for their findings or that these "lack-of-qualification" decisions were somehow contrived because of complainant's race, national origin, age or EEO activity. Indeed, an employer's action or decision is not discriminatory or retaliatory if it is based on a reasonable belief that the information considered at the time was accurate, even if it later is shown that the information was incorrect. Nix v. WLCY Radio/Rayhall Communications, 738 F.2d

9

1181 (11th Cir. 1984).

In response, complainant also cites an example of a substitute teacher who was converted, without competition, to a regular teaching assignment in late 2000 or early 2001, an assignment for which complainant states he was qualified. Assuming that complainant's claim involving this particular selection decision is timely, complainant offers no evidence, and the record contains no evidence, indicating that the selecting official involved lacked authority or in any way intended to forestall complainant's opportunity to compete by relying upon a non-competitive selection process which was authorized pursuant to neutral and non-discriminatory agency personnel practice and procedure. AJE: 1, 2, 3.

Complainant argues, as well, that he has observed that individual teachers within his protected category are not represented or are under-represented in the relevant agency teaching workforce, an observation which, in his opinion, evinces discrimination. However, complainant offers no evidence, and the record contains no evidence, indicating that the teacher workforce is not reflective of the protected category make-up of the qualified applicant pool. Without such evidence, complainant's observations, even if true, are not evidence of discrimination or pretext with respect to the discrete selections at issue herein.

With respect to complainant's claims insofar as they are based upon reprisal, it is noted, finally, that the main EEO activity on which complainant relies for his claim of retaliation occurred seven years before the events leading to the institution of this action and involved a management official who had since retired form the agency. Such a nexus is too tenuous to support a reprisal-based claim. Clark County School District v. Breeden, 532 U.S. 268 (2001); Ponticelli v. Zurich

10

American Ins. Co., 16 F. Supp. 414 (S.D.N.Y. 1998).

Thus, complainant is unable to establish all aspects of his complaint arising from the determination that he was not qualified to be included within relevant applicant pools and, thus, could not be considered for teaching positions during the relevant time period. The agency has explained its decisions for legally sufficient reasons and there is no evidence of pretext. St. Mary's Honor Center v. Hicks, supra.

## VI. DECISION.

Based on all of the above and considering the evidence in the light most favorable to complainant, including arguments and evidence not specifically addressed in this Decision, I conclude that complainant is unable to establish or to make a sufficient showing on essential elements of his case on which he has the burden of proof and that the agency, therefore, is entitled to judgement as a matter of law. Celotex Corp. v. Catrett, supra; Anderson v. Liberty Lobby, Inc., supra.

Date: 10/27/04

Daniel E. Leach, Federal Administrative Judge

## NOTICE

This is a Decision is issued pursuant to 29 C.F.R. §1614.109. Relevant regulations require the Agency to take final action on the complaint by issuing a final order within 40 calendar days of receipt of the Decision. The Agency's final order shall notify the complainant whether or not the Agency will fully implement this Decision, and shall contain notice of the complainant's right to appeal, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. **With the exception detailed in the next paragraph, complainant may not file an appeal directly from this Decision.** Rather, complainant may appeal within 30 calendar days of receipt of the Agency's final order concerning its implementation of this Decision. If the final order does not fully implement this Decision, the Agency must also simultaneously file an appeal in accordance with 29 C.F.R. §1614.403, and append

11

a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached to the final order.

Complainant may only appeal directly from this Decision in the event that the Agency has **not** issued its final order within 40 calendar days of its receipt of the hearing file and this decision. In this event, the complainant should append a copy of the Administrative Judge's decision to the appeal. The complainant should furnish a copy of the appeal to the opposing party at the same time it is filed and should certify to the EEOC the date and method by which such service was made on the opposing party.

All appeals must be filed by mail, personal delivery or facsimile to the following address:
> Director, Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848, Washington, D.C. 20036
> Fax No. (202)663-7022 (Facsimile transmissions
> over 10 pages will not be accepted).

CERTIFICATE OF MAILING

I hereby certify that on the 27 th day of October, 2004, I mailed my foregoing Decision and Notice to the agency, and copies to the complainant and to the agency counsel.

Daniel E. Leach, Federal Administrative Judge

Virgil M. Lorenzo
PSC 559 Box 5288
FPO AP 966377

Robert Terzian, Esq.
DODEA Office of Counsel

12

# Terzian, Bob

| | |
|---|---|
| **From:** | Terzian, Bob |
| **Sent:** | Friday, March 24, 2006 9:23 AM |
| **To:** | 'Virgil Lorenzo' |
| **Cc:** | 'Virginia_T_Kilgore@gud.uscourts.gov'; 'Chenery, Marie (USAGU)' |
| **Subject:** | RE: Scheduling of Discovery |

Mr. Lorenzo: I have not received a copy of your complaint by certified mail. Please be advised that your obligation is to serve the Secretary of Defense in the Pentagon when you file suit. Furthermore, please be advised that I am no longer in a position to communicate directly with you. Your filing of suit in the Federal Courts has placed the US Attorney for Guam in the counsel role for all purposes. Please redirect any communication you wish to have to that office and do not expect me or any DoDEA school official to respond directly to you concerning any matter unless and until I am specifically authorized by the US Attorney to do so (at which time I will so inform you.). Please also be advised that you must coordinate with the US Attorney in Guam prior to making any contact with any DoDEA employee in connection with any issue related to your litigation. Thanks you. RPT

> -----Original Message-----
> **From:** Virgil Lorenzo [mailto:vmlorenzo@email.uophx.edu]
> **Sent:** Thursday, March 23, 2006 10:11 PM
> **To:** Terzian, Bob
> **Cc:** Virginia_T_Kilgore@gud.uscourts.gov
> **Subject:** Scheduling of Discovery
>
>
>
> Mr. Terzian,
>
> I received the return receipt of the certified mail of the summons I sent to you. A second certified mail contains a copy of the complaint. Since you handled this case in the last 20 months while it was at the EEOC, you have been informed of the complaint and familiar with my position.
>
> I would like to explore with you the discovery I would like to make so you can tell the court how much time the various sections of DODEA would need to comply when we meet for scheduling on April 11.
>
> 1. An inquiry into the policy in effect in the year 2001 that hid the names of principals and their negative evaluations from view of applicants but in full view of potential hiring principals. All other evaluators are displayed and an applicant can inquire into the content of their evaluation. But the hidden, negative, evaluations and their authors cannot be challenged until a formal complaint is filed with the EEO, a lengthy process. The explanation given to me was that principals do not readily give negative evaluations and this arrangement gives them a safe environment to come forward with the negative evaluations.
>
>    I contend that this policy adversely affects minorities like myself who had prior EEO activity, male, and over age 55. To prove it, I need data on all applicants in the school years 2001-2006 that showed negative evaluations on their files. I need their age, gender, race, EEO activity, and a statement whether these negative evaluations and their authors were hidden or not.
>
> 2. When confronted with my contention that the principal was never my supervisor, the Human Resource Director of Okinawa, Mr. Banca, conditionally deleted the negative evaluation, pending the principal producing evidence. After eight weeks and the principal failing to come up with a written evidence, I asked that the deletion be made permanent and that an admission of error be

noted on my application so that those who previously saw the negative evaluation may completely disregard it. The Director refused, contending that the principal had some recollections of me. The Director also asserted that the system should not render negative evaluations too onerous for principals to make. A vague memory was enough for the principal to post a negative evaluation.

I contend that this policy adversely impacts minorities such as myself. To prove it, I need data on applicants who had negative evaluations on their files and exonerated themselves and had the negative evaluation purged from their files. I need their name, race, age, gender, EEO activity, and a statement when and how they finally got the negative evaluation permanently purged. I also need a statement whether or not the negative evaluation was erroneously entered and if so whether or not an admission of error was declared.

3. I contend that the principals who I wrote to and drew attention to my EAS file while the negative evaluation was posted could exercise flexibility in their request for teachers if they wanted to avoid me. Thus they can request for a Physics/English teacher and a P.E./Social Studies teacher rather than an English/Social Studies teacher. English and Social Studies are on my credential.

To prove this I need to send a questionnaire to five principals to verify that indeed principals who saw the negative evaluation on my file can exercise flexibility and avoid me.

4. How did Frank Roehl know that I re-applied? His name does not appear on my application because he never was my principal. The most memorable contact with him was when I named him defendant in an EEO complaint in 1993. The implication is that there exists a list of EEO complainants shared among DODDS principals that screen re-applicants. Those that had prior EEO activity are tagged and subject to actions similar to what Roehl did to me.

I contend that this policy adversely affects minorities and to prove that I need a list of re-applicants in the school years 2001-2005, their prior years of service in DODDS, whether they were temporary or permanent, their race, age, EEO and activity, and the action taken on their application.

6. On my non-selection in the school year 2000-2001 at Kadena High School, the question that needs to be answered is: did the principal do all she can to procure the best qualified applicant from among those she has personal knowledge.

Is she obligated to procure the best qualified of teachers based on the applications she has looked into?

There may be other items I would like included when we meet.


Respectfully yours,

Virgil M. Lorenzo, Ed.D.
Faculty, University of Phoenix
Okinawa, Japan



ADD APPLICATION | SEARCH | REPORTS | E-MAIL | USER ADMIN | CODE TABLES

Edit Applicant Profile | User Guide | Logout

APPLICATION | STATUS | QUALS | REPORTS | DODEA USE ONLY

# Application

**Applicant:** VIRGIL LORENZO

Please complete the following sections of your application. You may complete all sections in one session or complete one or more now and login at another time to complete the others. The first section you will need to complete is the Personal Information section of your application. Once you have completed all the sections of your application, you may finalize and submit it online for DoDEA review. After submittal, please check the Status module for a list of required supplemental material

Please Note: You will need to complete and submit your application within 30 days, or your application will be removed from th system. **Please do not use the "Back" button on your browser while using this system.**

. . . . . . . . . . . . . . . . . . . . . . .

COMPLETED

▸ **Personal Information**
Provide general information about yourself


▸ **Target Job**
Indicate the teaching position(s) in which you are interested


▸ **Target Location and Date**
Indicate your teaching location and date preferences


▸ **Education**
Provide information about your background and education


▸ **Skills/Activities**
Provide an overview of your skills and activities


COMPLETED

▸ **PRAXIS Test Scores**
Determine if you are exempt from PRAXIS or if you need to enter your scores here


▸ **Work Experience**
Provide information about your work experiences


▸ **Additional Experience Information**
Answer some additional questions concerning federal employment


▸ **Professional Evaluations**
List job related evaluations from former employers (must enter three to complete this section)


# EAS Application

| | |
|---|---|
| Name Prefix | Mr. |
| First Name | VIRGIL |
| MI | M |
| Last Name | LORENZO |
| Suffix | |
| SSN | 547112506 |
| Email Address | virgillorenzo@hotmail.com |

**Status Information**

| | |
|---|---|
| Applicant Class | Local |
| Troops To Teachers: | N/A |
| Are you a US citizen? | Yes |
| Date of Birth | 02-23-1945 |
| Veteran's Preference? | Non-Veteran or Veteran without Preference |
| Verified Veteran's Preference: | Non-Veteran or Veteran without Preference |

**Current Address**

| | |
|---|---|
| Address (line 1) | PSC 559 |
| Address (line 2) | BOX 5288 |
| City | FPO |
| State | AP |
| Zip Code | 96377 |
| Country | |
| Home Phone | 011-81-98-965-7813 |
| Work Phone | 011-81-98-965-7813 |

**Permanent Address**

Address (line 1)  6602 HOLLYCREST

Address (line 2)

City  SAN DIEGO

State  California

Zip Code  92121

Country

Home Phone  858-558-3707

Work Phone

Voluntary Information

Sex  Male

Race/National Origin  Asian or Pacific Islander

Disability Claim  I do not have a handicap

Source Learned of DoDEA  Friend or relative working for DoDDS

Target Jobs

| Job Interested In | National Board/ State Certified | Education Degree with Major Related to Field | Course Description |
|---|---|---|---|
| Grades 4, 5 ,6 | no | yes | |
| Middle School English | yes | yes | |
| Middle School Journalism | no | yes | |
| Middle School Social Studies | yes | yes | |
| Middle School Mathematics | no | yes | |
| Secondary English | yes | yes | |
| Secondary Social Studies | yes | yes | |
| Secondary General Science | no | yes | |
| Secondary Humanities | no | yes | |
| Secondary Business | yes | no | |
| Secondary Latin | no | yes | |

| | | |
|---|---|---|
| Secondary Spanish | no | yes |
| Secondary Compensatory Educ. | no | yes |
| Information Specialist, ES | no | yes |
| Information Specialist, MS | no | yes |
| Information Specialist, SS | no | yes |
| Grades 4,5,6 Lang Imm - Spanish | no | yes |

## Availability

For which School Year do you wish to be considered? 2006 - 2007

Availability Date 02-04-2000

Date of Expected Rotation (DEROS)

In which city would you like to be interviewed? San Diego, CA

## Interest Area

Are you on sponsor's orders? No

Spouse's Military Involvement DoD Civilian Spouse

Schools in which you are interested EJ King E/HS

## DoDEA Use Only

Has had an Interview? Yes

Name of Interviewer Sterry

Interview Score 2

Would you hire? Yes

## Education

| College Name | City | State/Territory | Zip | Major | Degree Received | Date Receive |
|---|---|---|---|---|---|---|

| | | | | | | d |
|---|---|---|---|---|---|---|
| University of San Diego | San Diego | CA | 92110 | Leadership | Ed.D. | 5-1998 |
| Purdue University | Hammond | IN | | English | M.S. in Secondary Education | 5-1975 |
| St. Louis University | Baguio City, RP | AA | | English/Philosophy | B.A. | 5-1967 |
| University of Maryland | Heidelberg | AE | | Geography | none | |
| Iowa University | Nurenberg | AE | | Journalism | none | |
| City College of Chicago | Mannheim, Germany | AE | | Business | none | |

## Skills/Activities

| | |
|---|---|
| Highest Level of Education Completed | Ph.D. |
| Additional Training Experience | Business Lab, Conducting In-Service Training, English as a Second Language, Service Learning, Cooperative Learning, School and Community Partnership, Small School Experience, Middle School Experience, Distance Learning, Involving Parents in Education of Their Children |
| Extra-Curricula Activities | School Publications |

## Other Qualifications

CAREER EDUCATION. To fulfill the requirement of the Professional Standards Board of Indiana for an administrative license, I did extensive research on career education and on-site review of programs and interview of career counselors at Seoul American High School. ENGLISH. Taught college-level English at the University of Maryland and City College of Chicago in Germany (1990-94) and Japan (1998-2000). SPANISH AND THE STUDY OF COOPERATION. In addition

to having taught high school Spanish in Mannheim (1991-92),I was member of a team that translated the "Pensamientos de Don Jose Maria Arizmendiarrieta" ISBN 84-88125-13-5, published in Navarra, Spain, Graficas Lizarra, S.L. Estella, 2000. In 1995-98, I collaborated with Dr. Hildebrand and David Herrera to provide education students at the University of San Diego the opportunity to study on location this unique integration of education, manufacturing, banking, and marketing. Don Jose Maria Arizmendiarrieta pionered a technical high school that is today part of the complex called the Mondragon Cooperative Corporation. LANGUAGES. I studied French and German before and during my stay in Europe (1990-94)and I am functionally literate in both. BUSINESS. In addition to teaching Keyboarding in a business class and actively participating in the Business Advisory Board meetings (1995-07, I studied and secured licenses in Indiana, Texas, and California, in Life and Casualty Insurance, Real Estate, Securities. For six years I developed marketing strategies and managed a staff that sold and serviced these products and devoted another ten years doing it on my own. SOCIAL STUDIES (WORLD CIVILIZATION). I have extensively travelled. I have seen the Blue Nile, dipped in the Red Sea, and dabbled with Amharic, the Ethiopian language. I lived in a Kibbutz, touched the Taj Mahal, trod the Rice Terraces of Banaue, rode the gondola in Venice, climb the Eifel and Tokyo Towers, volksmarched through Germany, and floated down the Rhine. In the U.S., I lived near Chicago for ten years, San Antonio for eight years, and San Diego for four years. I taught the U.S. Constitution to graduate students of public school law (1999-2003) and delve in the history of the nation as we trace the development of public education. My experience in teaching high school social studies (1970-72)was enriched by the mentoring of a professor from Oxford, England, who provided insight and guidance in the discovery method. COACHING A CHESS TEAM. Guided a middle school chess team to second place in a state tournament in Indiana(1972-76).

## Teaching Experience

| | |
|---|---|
| 7+ years of teaching experience? | Yes |

## Certification/Licenses

| | |
|---|---|
| National Board Certified? | No |
| Educator License Type (State/Territory received) | Indiana, DoDDS |
| Exempt from PRAXIS tests | Yes |
| Meet the DoDEA | No |

PRAXIS
requirements



| Test Scores | |
| --- | --- |
| Test Taken | Score |

No test information has been entered.

| School/Place of Employment Name | Job Title | From | To | Supervisor's Name | Supervisor's Phone Number | Sent the Salary Verification form (DS Form 5013)? |
| --- | --- | --- | --- | --- | --- | --- |
| Edison Middle School | Teacher, English as a Second Language | 08-28-1972 | 06-15-1976 | Catherine Hughes (deceased 1976) | not applicable | yes |
| Heidelberg American High School | Classroom Teacher | 09-01-1990 | 06-15-1991 | Mr. Roger Macray | n/a | yes |
| Mannheim American High School | Classroom Teacher | 08-28-1991 | 01-20-1992 | Mr. Lloyd Morrow | n/a | yes |
| Samuel Morse High School | Classroom Teacher | 08-28-1995 | 06-20-1997 | Anne Marie Hake and SallyIdos (ext 1003) | 619-262-0763 ex 4304 | yes |
| University of Maryland | Term Instructor | 08-25-1998 | 05-25-2000 | Dr. Berg | 81989381111Ext634 438 | no |
| Troy State | Term | 01-10- | 08-10- | Dr. Von | 8198938-1111 ext | no |

| University | Instructor | 1999 | 2003 | Lehmen, then Dr. Shockley | 634 | |
| Jimma Teacher Training Institute, Ethiopia | Instructor | 01-03-1970 | 06-01-1972 | Ato Legesse | n/a | yes |
| PEACE Schools International | President | 09-01-2001 | present | self | 858-558-3707 | no |
| University of Phoenix | Practicing Faculty | 05-01-2005 | present | Charles Crissey | 81989381111EX6345224 | yes |

## Teaching License Information

| Has your teaching license ever been revoked? | No |

License revoked explanation

## Defense Domestic Elementary and Secondary Schools (DDESS) Information

| Currently teaching for DDESS? | No |

Current DDESS position and location

## Department of Defense Overseas School System (DoDDS) Information

| Currently Part-time DoDDS Employee? | Yes |
| Current or Previous DoDDS Student Teacher? | No |
| Former DoDDS Employee? | Yes |
| If Former DoDDS - Last Year Employed | 1994 |
| If Former DoDDS - School Name | Mannheim HS |

## Federal Civilian Employee (FCE) Information

Are you a Federal Civilian Employee (FCE)?   Not Applicable

If FCE - FCE Series

If FCE - FCE Grade

If FCE - FCE Date From

If FCE - FCE Date To

If FCE - Are you a Retired Federal Civilian Employee (FCE)?

If FCE - Are you eligible for reinstatement based on career or career-conditional Federal status?

## Professional Evaluations

| Last Name | First Name | M I | Online Evaluation | Eval Score | Phone Number | Email |
|---|---|---|---|---|---|---|
| Abascal-Hildebrand | Mary | J | yes | | 707-875-3176 | mabascal@earthlink.net |
| Hake / Brigante | Anne / Al | M | no | 1 | 619-262-0763ext4304 | ahake@morsehs.com |
| Morrow | Lloyd | C | no | | last DODDS evaluator | |
| Crissey | Charley | | yes | 1 | KadenaAirBas634-5224 | charley.crissey@phoenix.edu |

## For DoDEA Use Only

Evaluation Score Average = 1.00

**California Home**                                                                                                Wednesday, April 5

*Welcome to* **California**                                              **HOLLYWOOD**

### California Teacher Credential Look-up and Renewal

Search for Credential for a Public School Teacher

Search for a Teacher's Application Status and Credentials Held

Renew Credentials

Track Payment(Renewal Only)

Track Payment (Recommendation Only)

Start the IHE Login Page

Start the Student Applicant Login

Frequently Asked Questions

Glossary of Credential Terms

**California Commission on Teacher Credentialing Web Site**

**Governor's Home Page**

**Contact the Commission on Teacher Credentialing**

## California Commission on Teacher Credentialing

search   ○ My CA

### Selected Credential Held

The application status and credential information was last updated on 04/04/2006. Please note: Upon receipt, the California Commission on Teacher Credentialing may take up to 75 working days to process an application.Local employing agencies have the flexibility to assign individuals to serve in subject areas other than those authorized on credentials. The Commission, at one time, issued documents without assigning any document number. Assigning a document number to these records was necessary to be able to display them online. The document numbering assigned to display those records will appear as "NONE1, NONE2, NONE3, etc."

### Details of Selected Credential

**Name:** LORENZO, VIRGIL MARILAN

**Document Title**   Clear Bilingual, Crosscultural, Language and Academic Development Certificate

**Document Number**   940104825

**Authorization Code(s)**   S14

This certificate, when held in conjunction with a prerequisite credential or permit specified in Education Code Section 44253.4, authorizes the holder to provide the following services to limited-English-proficient pupils: (1) instruction for English language development, and instruction for primary language development in the language of emphasis indicated above, in grades twelve and below, including preschool, and in classes organized primarily for adults, except when the prerequisite credential or permit is a designated subjects adult education teaching credential, a children's center instructional permit, or a children's center supervision permit, in which case instruction for English language development and primary language development is limited to the programs authorized by that credential or permit; (2) specially designed content instruction delivered in English in the subjects and at the levels authorized by the prerequisite credential or permit; and (3) content instruction delivered in the language of emphasis indicated above in the subjects and at the levels authorized by the prerequisite credential or permit. Education Code Section 44253.4 includes all credentials and permits that authorize instruction except emergency credentials or permits, college or university internship credentials, District Internship Certificates, Exchange Certificated Employee Teaching Credentials, or Sojourn Certificated Employee Teaching Credentials.

**Renewal Code(s)**   S31B

This certificate need not be renewed. The authorization shall remain in force as long as the valid prerequisite credential or permit is held concurrently.

**Issuance Date**   06/21/1994

**Authorized Subject(s)**   Pilipino

[◄ Return to Summary]   [New Search]

Top of Page

Conditions of Use | Privacy Policy | E-mail Webmaster
© 2002 State of California. Arnold Schwarzenegger, Governor.



**Employment Application System** EAs

## Audit History

**Applicant:** VIRGIL LORENZO

### Application Status

| Date of Change | Changed From | Changed To | Changed By |
|---|---|---|---|
| 03-03-2004 | | Inactive | Nobody |
| 03-16-2004 | Inactive | | VIRGIL LORENZO |
| 03-17-2004 | Inactive | | Nobody |
| 03-17-2004 | Inactive | Active | Nobody |

Back



## Audit History

**Applicant:** VIRGIL LORENZO

### Target Job - Qualification Status

| Date of Change | Changed From | Changed To | Changed By |
|---|---|---|---|
| 07-22-2002 | | Middle School Social Studies - State Qualified | Nobody |
| 08-12-2002 | Secondary Spanish - Not Qualified | Secondary Spanish - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Middle School Journalism - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Business - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Middle School Journalism - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Latin - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Humanities - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Compensatory Educ. - Not Determined | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Social Studies - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Social Studies - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | Middle School Journalism - State Qualified | | VIRGIL LORENZO |
| 08-12-2002 | | Middle School Journalism - Not Determined | VIRGIL LORENZO |
| 08-12-2002 | Middle School Journalism - Not Determined | Middle School Journalism - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | Secondary Compensatory Educ. - Not Determined | Secondary Compensatory Educ. - State Qualified | VIRGIL LORENZO |
| 01-29-2003 | | Middle School Mathematics - Not Determined | VIRGIL LORENZO |
| 01-30-2003 | | Career Education Coordinator - Not Determined | VIRGIL LORENZO |
| 03-20-2003 | Middle School Mathematics - Not | Middle School Mathematics - Not | Nobody |

|  | Determined | Qualified |  |
|---|---|---|---|
| 03-20-2003 | Career Education Coordinator - Not Determined | Career Education Coordinator - Not Qualified | Nobody |
| 08-27-2003 |  | Secondary General Science - Not Determined | VIRGIL LORENZO |
| 09-09-2003 | Secondary General Science - Not Determined | Secondary General Science - Not Qualified | Nobody |
| 06-13-2004 | Middle School Mathematics - Not Qualified |  | VIRGIL LORENZO |
| 04-12-2005 | Secondary General Science - Not Qualified | Secondary General Science - State Qualified | VIRGIL LORENZO |
| 04-12-2005 | Career Education Coordinator - Not Qualified |  | VIRGIL LORENZO |
| 05-19-2005 |  | Grades 4,5,6 Lang Imm - Spanish - State Qualified | VIRGIL LORENZO |
| 05-19-2005 |  | Grades 4, 5 ,6 - State Qualified | VIRGIL LORENZO |
| 06-01-2005 |  | Middle School Mathematics - Not Determined | VIRGIL LORENZO |
| 06-01-2005 | Middle School Mathematics - Not Determined | Middle School Mathematics - State Qualified | VIRGIL LORENZO |
| 02-16-2006 |  | Information Specialist, ES - State Qualified | VIRGIL LORENZO |
| 02-16-2006 |  | Information Specialist, MS - State Qualified | VIRGIL LORENZO |
| 02-16-2006 |  | Information Specialist, SS - State Qualified | VIRGIL LORENZO |

Back



**Employment Application System** EAs

## Audit History

**Applicant:** VIRGIL LORENZO

### Target Job - Qualification Status

| Date of Change | Changed From | Changed To | Changed By |
|---|---|---|---|
| 07-22-2002 | | Middle School Social Studies - State Qualified | Nobody |
| 08-12-2002 | Secondary Spanish - Not Qualified | Secondary Spanish - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Middle School Journalism - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Business - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Middle School Journalism - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Latin - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Humanities - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Compensatory Educ. - Not Determined | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Social Studies - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | | Secondary Social Studies - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | Middle School Journalism - State Qualified | | VIRGIL LORENZO |
| 08-12-2002 | | Middle School Journalism - Not Determined | VIRGIL LORENZO |
| 08-12-2002 | Middle School Journalism - Not Determined | Middle School Journalism - State Qualified | VIRGIL LORENZO |
| 08-12-2002 | Secondary Compensatory Educ. - Not Determined | Secondary Compensatory Educ. - State Qualified | VIRGIL LORENZO |
| 01-29-2003 | | Middle School Mathematics - Not Determined | VIRGIL LORENZO |
| 01-30-2003 | | Career Education Coordinator - Not Determined | VIRGIL LORENZO |
| 03-20-2003 | Middle School Mathematics - Not | Middle School Mathematics - Not | Nobody |

| | Determined | Qualified | |
|---|---|---|---|
| 03-20-2003 | Career Education Coordinator - Not Determined | Career Education Coordinator - Not Qualified | Nobody |
| 08-27-2003 | | Secondary General Science - Not Determined | VIRGIL LORENZO |
| 09-09-2003 | Secondary General Science - Not Determined | Secondary General Science - Not Qualified | Nobody |
| 06-13-2004 | Middle School Mathematics - Not Qualified | | VIRGIL LORENZO |
| 04-12-2005 | Secondary General Science - Not Qualified | Secondary General Science - State Qualified | VIRGIL LORENZO |
| 04-12-2005 | Career Education Coordinator - Not Qualified | | VIRGIL LORENZO |
| 05-19-2005 | | Grades 4,5,6 Lang Imm - Spanish - State Qualified | VIRGIL LORENZO |
| 05-19-2005 | | Grades 4, 5 ,6 - State Qualified | VIRGIL LORENZO |
| 06-01-2005 | | Middle School Mathematics - Not Determined | VIRGIL LORENZO |
| 06-01-2005 | Middle School Mathematics - Not Determined | Middle School Mathematics - State Qualified | VIRGIL LORENZO |
| 02-16-2006 | | Information Specialist, ES - State Qualified | VIRGIL LORENZO |
| 02-16-2006 | | Information Specialist, MS - State Qualified | VIRGIL LORENZO |
| 02-16-2006 | | Information Specialist, SS - State Qualified | VIRGIL LORENZO |

Back

## REQUEST/AUTHORIZATION FOR DOD CIVILIAN PERMANENT DUTY OR TEMPORARY CHANGE OF STATION (TCS) TRAVEL

*(Reference: Joint Travel Regulations) (Read Privacy Act Statement on back before completing form.)*

### SECTION I - REQUEST FOR OFFICIAL TRAVEL

| 1. DATE *(YYYYMMDD)* | 2. NAME *(Last, First, Middle)* | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| 10 Apr 2003 | LORENZO TERESITA D | 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 |

| 4. NEW POSITION TITLE | 5. GRADE OR RATING | 6. RETIREMENT CODE *(Insert retirement code from Block 30 of employee's most recent SF-50. If unknown, employee should contact their servicing personnel office.)* |
|---|---|---|
| 0490 GUIDANCE COUNSELOR (ELEMENTARY) | TP-1701-EE | K |

| 7. RELEASING OFFICIAL STATION AND LOCATION, OR ACTUAL RESIDENCE | 8. NEW OFFICIAL STATION AND LOCATION, ACTUAL RESIDENCE OR ALTERNATE DESTINATION |
|---|---|
| Bechtel ES<br>Okinawa, Japan<br><br>HHG<br>From: | HOR: San Antonio, Texas<br>ALT DEST: San Diego, California and return<br><br>HHG<br>To: |

**9. REPORTING DATE AT NEW DUTY STATION** *(YYYYMMDD)*

| 10. TRAVEL PURPOSE | 11. TRANSPORTATION MODE | 12a. PER DIEM FOR EMPLOYEE |
|---|---|---|
| [ ] BETWEEN OFFICIAL STATIONS | [X] GOVERNMENT  [X] POC | [X] YES  [ ] NO |
| [X] RENEWAL AGREEMENT | [X] COMMERCIAL  [X] RAIL | b. PER DIEM FOR DEPENDENT(S) |
| [ ] RETURN FROM OVERSEAS FOR SEPARATION | [X] AIR | [ ] YES  [X] NO |
| [ ] TEMPORARY CHANGE OF STATION | MILEAGE RATE: | |
| [ ] OTHER  Renewal Agreement Travel (RAT) | $ IAW JTR | |

| 13a. ROUND TRIP TRAVEL FOR HOUSE-HUNTING | 14a. TEMPORARY QUARTERS SUBSISTENCE EXPENSE | 15a. HOUSEHOLD GOODS (HHG) SHIPMENT |
|---|---|---|
| [ ] YES  [X] NO | [ ] YES  [X] NO | [ ] YES  [X] NO |
| [ ] ACTUAL EXPENSE  [ ] FIXED | [ ] ACTUAL EXPENSE  [ ] FIXED | [ ] COMMUTED RATE |
| b. NUMBER OF DAYS *(Including travel)* | b. NUMBER OF DAYS AUTHORIZED | [ ] GOVERNMENT BILL OF LADING (GBL) |
| | | b. NET WEIGHT AUTHORIZED |

| 16. OTHER AUTHORIZED EXPENSES | | 17. DEPENDENT TRAVEL |
|---|---|---|
| [ ] TEMPORARY STORAGE OF HHG | [ ] UNEXPIRED LEASE | [X] CONCURRENT |
| [ ] NONTEMPORARY STORAGE OF HHG | [ ] RELOCATION INCOME TAX ALLOWANCE | [ ] DELAYED |
| [ ] RELOCATION SERVICES | [ ] POV SHIPMENT [ ] CONUS [ ] OCONUS | [ ] EARLY RETURN |
| [ ] PROPERTY MANAGEMENT SERVICES | [ ] MISCELLANEOUS EXPENSES | [ ] NOT AUTHORIZED |
| [ ] REAL ESTATE EXPENSES | [ ] TRAVEL ADVANCE AUTHORIZED *(Amount)* $ _____ | |

| 18a. DEPENDENT TRAVEL FROM *(Home Address)* | b. TO *(New PDS)* |
|---|---|
| Bechtel ES<br>Okinawa, Japan | HOR: San Antonio, Texas<br>ALT DEST: San Diego, California and return |

**19. DEPENDENTS**

| a. NAME *(Last, First, Middle Initial)* | b. RELATIONSHIP | c. DATE OF BIRTH *(YYYYMMDD)* |
|---|---|---|
| Lorenzo, Virgli M. | SPOUSE | |
| | | |
| | | |

| 20. ESTIMATED COST | | | | 21. TRANSPORTATION AGREEMENT SIGNED *(X one)* |
|---|---|---|---|---|
| a. PER DIEM | b. TRAVEL | c. OTHER | d. TOTAL | [X] YES  [ ] NO |
| $ 75.00 | $ 4,800.00 | $ 200.00 | $ 5,075.00 | DATE SIGNED *(YYYYMMDD)*  03 Apr 2003 |

### SECTION II - AUTHORIZATION FOR OFFICIAL TRAVEL

**22. ACCOUNTING CITATION**

9730100.6018 P5510 3336 2122 DEPC32321C9PM2 S49451 TAC:HE3P S49451 APC:99FB CIC: 1/0/A/A/3/2321/S49451
FCFA: 9730100.6066 JA S66666

| 23. APPROVING OFFICIAL | b. SIGNATURE |
|---|---|
| a. TITLE  Teresa Daniels<br>Personnel Management Specialist | *Teresa Daniels* |

| 24. ORDER-ISSUING/AUTHENTICATING OFFICIAL | b. SIGNATURE | c. ORGANIZATION ADDRESS |
|---|---|---|
| a. TITLE  Irma P. Finocchiaro, Comptroller<br>Department of Defense Education Activity<br>4040 N. Fairfax Drive, Arlington, VA 22203-1635 | *Debra P. Rorie* | DoDEA, Personnel Center<br>4040 N. Fairfax Drive, Arlington, VA 22203-1634<br>POC: Team B (703) 696-3062 |

| 25. TRAVEL ORDER NUMBER | 26. DATE ISSUED *(YYYYMMDD)* |
|---|---|
| PC32321 | 11 Apr 2003 |

**DD FORM 1614, OCT 2001**          PREVIOUS EDITION IS OBSOLETE.

Daily Press Briefing |

SEARCH

**Home**  **Issues & Press**  **Travel & Business**  **Youth & Education**  **About State Department**

Select Another Location
Select by Allowance Type
Custom Search

# Allowances by Location

## Country: Japan
## Rates Effective: 04/02/2006

View Previous Rates: 04/02/2006 ▼ GO

| Location | Cost of Living Allowance | Post (Hardship) Differential | Transfer Zone | Footnotes | Danger Pay Allowance | Education Allowance | Living Quarters Allowance | Reporting Requirements |
|---|---|---|---|---|---|---|---|---|
| Akizuki | 50 | 0 | 2 | N/A | | View rates | View rates | View |
| Fukuoka | 60 | 0 | 2 | N/A | | View rates | View rates | View |
| Gotemba | 35 | 0 | 2 | N/A | | View rates | View rates | View |
| Hiroshima | 42 | 0 | 2 | N/A | | View rates | View rates | View |
| Iwakuni | 25 | 0 | 2 | N/A | | View rates | View rates | View |
| Kyoto | 50 | 0 | 2 | N/A | | View rates | View rates | View |
| Misawa | 25 | 0 | 2 | N/A | | View rates | View rates | View |
| Nagoya | 50 | 0 | 2 | N/A | | View rates | View rates | View |
| Okinawa Prefecture | 25 | 0 | 3 | N/A | | View rates | View rates | View |
| Osaka-Kobe | 50 | 0 | 2 | N/A | | View rates | View rates | View |
| Other | 25 | 0 | 2 | N/A | | View rates | View rates | View |
| Sapporo | 50 | 0 | 1 | N/A | | View rates | View rates | View |
| Sasebo | 25 | 0 | 2 | N/A | | View rates | View rates | View |
| Tokyo City | 60 | 0 | 2 | N/A | | View rates | View rates | View |
| Tokyo-To | 25 | 0 | 2 | N/A | | View rates | View rates | View |
| Yokohama | 50 | 0 | 2 | N/A | | View rates | View rates | View |
| Yokosuka | 35 | 0 | 2 | N/A | | View rates | View rates | View |

Daily Press Briefing |

SEARCH

| Home | Issues & Press | Travel & Business | Youth & Education | About State Department |

<u>Return to Japan listing</u>
<u>Select Another Location</u>
<u>Select by Allowance Type</u>
<u>Custom Search</u>

# Living Quarters Allowances

## Country/Post: Japan/Okinawa Prefecture
## Rates Effective: 04/02/2006

View Previous Rates: 04/02/2006 GO

| Family Status | Group 2 | Group 3 | Group 4 |
|---------------|---------|---------|---------|
| WF | 43600 | 43600 | 38000 |
| WOF | 43600 | 43400 | 38000 |