1   Virgil Lorenzo

2   PSC 559 BOX 5288

3   FPO AP 96377

4   011 81 98 965 7813

**FILED**
DISTRICT COURT OF GUAM

MAY 1 7 2006

MARY L.M. MORAN
CLERK OF COURT

5

6

7

8                          DISTRICT COURT OF GUAM

9                          TERRRITORY OF GUAM

10

11   Virgil Lorenzo *pro se*            )        MOTION IN CIVIL CASE

12                          Plaintiff   )

13        vs                            )        CASE NO. 05 - 00035

14   Donald  Rumsfeld                   )

15   Secretary, Department of Defense   )

16                          Respondent  )

17   _____    )

18   COMES now the Plaintiff, Virgil Lorenzo *pro se*, and moves to oppose the Defendant's

19   motion to dismiss his complaint.

20       **First,**  Defendants argue that "Congress Has Waived Sovereign Immunity For

21   Plaintiff to Bring His Title VII Claims Only in the Eastern District of Virginia."

22   If this were so, the EEOC instruction given to me would have been as plain as what the

23   Defendants now give the Court. But the EEOC gave no such instruction, thus implying

**1**

1    that Title VII gives me latitude within the framework Congress has established under 42

2    USC 2000e-5(f)(3). The quote below expresses the intent of Congress to endow

3    jurisdiction to 'each United States district court' by the use of the auxiliary 'shall.' The

4    instances that follow use 'may,' and do not detract from the earlier intent to endow and

5    oblige each court. Thus, while not absolute, the Plaintiff's choice of district court is

6    deferred to.

7    Each United States district court and United States court of a place subject to the
8    jurisdiction of the United States shall have jurisdiction of actions brought under
9    this title. Such an action may be brought in any judicial district in the State in
10   which the unlawful employment practice is alleged to have been committed, in
11   the judicial district in which the employment records relevant to such practice are
12   maintained and administered, or in the judicial district in which the aggrieved
13   person would have worked but for the alleged unlawful employment practice, but
14   if the respondent is not to be found within any such district, such an action may be
15   brought within the judicial district in which the respondent has his principal
16   office....
17

18   Defendants cite *Foxx* as analogous to my case. It is not. In *Foxx* Plaintiff wanted his

19   case adjudicated in Panama where the respondent was not to be found. In Guam the

20   respondent is represented by the U.S. Attorney.. Moreover, DODEA, the agency that is

21   directly involved in this case, is present in Guam and increasingly so as U.S. military

22   units and families from Okinawa transfer to Guam. While it is true that I have never been

23   employed in Guam, it is not true that I have never applied for employment in Guam. Let

24   it be stated for the record that I did apply for a teaching position at the University of

25   Guam in 2000 and recently applied for positions at Andersen AFB. TAB 1. With the

26   transfer of units from Okinawa, the employment I hoped to get absent discrimination will

27   transfer to Guam and I will too. For this reason, I also am now applying for a teaching

28   position in DODEA schools in Guam.

1    The alleged discrimination did not happen in Guam but it happened on a U.S. military

2    base that is only three hours away from Guam. This proximity gave reasonableness to the

3    decision of the U.S. District Court (USDC) in San Diego to reverse its filing of my case

4    and to refer me instead to Guam. I initially filed my complaint in San Diego because it

5    was where I had my last residence before living overseas. The USDC in San Diego did

6    not share the opinion of Defendants that only the Eastern District of Virginia can hear my

7    claim. Otherwise the USDC in San Diego would have been as plain as the Defendants in

8    directing me to Virginia.

9        The reasonableness of the decision of the USDC is supported by the fact that the

10   claim at its present format is completely supported by DODEA personnel based on

11   Okinawa. They have full access to records and files. Ed Banca, DODEA Personnel

12   Director in Okinawa, on his authority and using his computer in Okinawa, conditionally

13   deleted the negative evaluation entered into my application file by a DODEA supervisor

14   in Germany who never was my supervisor. After waiting a fair amount of time in vain for

15   the supervisor to support his negative evaluation, I put in a request that Banca delete the

16   evaluation permanently and acknowledge that the evaluation was entered erroneously so

17   that those who saw the negative evaluation would completely disregard it. Acting on his

18   authority, Banca told me that he would not do it because School Principal Roehl has a

19   vague memory of my working in his school.

20       Both Banca and myself reside three hours from Guam which fact compares

21   favorably with 17 hours from Virginia. Should we be called before the judge, we could

22   do so expeditiously and without much violence to our body clock.  Moreover, the spirit of

23   Title VII suggests deference to the preferences of the Plaintiff, within certain bounds.

1   The action of transferring the case to Virginia would impose on me hardship and more

2   delays. Justice shall not be served by the motion to transfer.

3       **Second,** Defendants move to dismiss the case for lack of personal jurisdiction is not

4   supported by fact. U.S. Attorney Rapades in Guam received the complaint and summons

5   on March 27, 2006; Attorney General Gonzales in Washington, D.C., received both on

6   March 30, 2006; and Donald Rumseld in care of Robert Terzian received both complaint

7   and summons on March 24, 2006. TAB 2. Why the Assistant U.S. Attorney did not bring

8   his copy to court on April 11 is a mystery. His exercise at diversion creates more delay.

9       While I supported the decision of the USDC in San Diego to transfer my case to

10  Guam, it delayed the whole process and shortened my time to correct inadequacies. But I

11  acted with due diligence. Upon receipt of the summons from the court I served it on the

12  U.S. Attorney in Guam, the Attorney General in Washington D.C., and Donald Rumsfeld

13  at the address used by the EEOC, namely, the DODEA headquarters, in care of Terzian,

14  DODEA counsel, to whom I directed all past documents against Donald Rumsfeld. When

15  I realized that Terzian would not receive it for Rumsfeld, though he did in the past, I sent

16  another one to Donald Rumsfeld at his address in the Pentagon.

17      Under Rule 4 (I) (3), "The court shall allow a reasonable time to serve process under

18  Rule 4 (i) for the purpose of curing the failure to serve." The time allowed me by the

19  court is reasonable and I am most grateful. One could wish that the EEOC provide

20  adequate 'transition' material from its proceedings to that of the U.S. district court.

21  Justice shall not be served by the Defendants' motion to dismiss given the gross injustice

22  I suffered.

23

1          Facts

2          During the recruiting months of January through August for the school year 2000-

3    2001, I submitted an application to teach in DODEA schools in Okinawa. I provided a

4    copy of the forms submitted at headquarters to the principal of Kadena High School,

5    Deborah Berry. She acknowledged looking into my application, noted that I taught

6    Spanish and Science at DODEA schools in Germany, and was impressed by the advanced

7    degrees I had. TAB 3.

8          Jacqueline Pruitt, DODEA personnel staffing specialist said in her affidavit, that

9    based on the transcripts at hand, I would have qualified to teach Spanish in June 2000,

10   that is, for the school year that began August 2000. TAB 4. The standard had not changed

11   since I taught Spanish in Germany in 1992 and June was the month I provided Berry

12   copies of what I sent to headquarters and told her I was interested in a Spanish position.

13   Unbeknownst to me, in the shuffle at the headquarters, the transcript and other forms I

14   submitted were misplaced only to turn up again at some later date. Pruitt admitted that

15   processing thousands of applications was overwhelming and was often interrupted by

16   urgent requests from school principals. TAB 5. Pruitt first claimed that my transcript was

17   missing and then found it, not knowing where the transcript came from or when it

18   arrived. TAB 4.

19         The Spanish position I applied for was filled by someone else at the beginning of the

20   school year, September, 2000, but became available again in December, 2000. One result

21   of the foul-up with my transcript was that Pruitt did not include me in the referral lists she

22   prepared in the school year 2000-2001 including the one that Berry allegedly requested in

23   December 2000..

1     School principals, however, are not limited to what is on the list, especially when they

2     know of the application of someone better qualified. There are principal-initiated hiring.

3     In my case, Berry was well-aware of my interest in the position and had a copy of the

4     forms I submitted. A phone call could have cleared the foul-up at headquarters. She did

5     not make the call and instead hired Dianne Mays, a white woman, who declared on her

6     application that she was not qualified to teach high school Spanish. TAB 6. Berry's

7     contract with DODEA and the welfare of the students entrusted to her required Berry to

8     hire the best-qualified applicant known to her. She knew of my application. Absent

9     discrimination, a reasonable principal would have acted on information she possessed to

10    hire the best qualified for her students.

11    For the recruiting season of January to August, 2001, a new standard was published,

12    requiring that I added six more units in Spanish. Those that qualified under the old

13    standard, when hired for the school year 2001-2002, had two years to meet the new

14    requirement. Thus the publication of the new standard in November 2000 did not

15    necessarily disqualify me for the school year 2001-2002, and certainly not for the school

16    year 2000-2001 when the Spanish position became available.

17    Defendants also cite expired teaching license. My teaching license from Indiana

18    cannot expire. It was issued in 1975 for life and was filed with DODEA the first time I

19    was employed to teach in Germany in 1990. The license was recently updated to reflect

20    my doctoral degree and the subject World Civilization. TAB 7.

21    During the investigation I discovered that Frank Roehl, a school principal in

22    Germany, had inserted on my application file the evaluation: NOT RECOMMENDED

23    FOR REHIRE.. The SF-5010 Additional Data under Professional Evaluation states his

1    evaluation thus: "Former DODDS supervisor, Frank Roehl, does not recommend him for

2    rehire." TAB 8. Evaluations are normally given by school principals whose names appear

3    on the list of evaluators and who are given a code by personnel to enter such an

4    evaluation. Or forms are submitted such as the one from my last principal in San Diego,

5    California. TAB 9. Roehl's evaluation and that of the San Diego principal are at opposite

6    ends of the pole and I could have raised the issue was I able to read Roehl's name among

7    my evaluators. His name was hidden..

8        Roehl entered his evaluation through another means and the system hid it from me

9    until a formal complaint revealed it. Banca said that Rhoel's evaluation was available to

10   school principals though hidden from me. Principals whose attention I called to my

11   application file could quietly de-select me and I would never know they did it because of

12   Roehl's evaluation. The Defendants highlight the claim that there is no evidence

13   principals even noticed the negative evaluation. Indeed, the non-normal procedure of

14   introducing negative evaluation into an application file is perfectly suited to hide

15   discrimination and I would like to establish during the discovery that this policy had an

16   adverse effect on protected minorities. In cases like *Rice v. Secretary of Health and*

17   *Human Services*, 01902474, 2725/A2 (1990), the EEO Commission followed the lead of

18   the Supreme Court in *Watson* and *Wards Cove*:

19       The Supreme Court has recently reaffirmed that facially neutral employment
20       rules, practices, policies or procedures which have significant adverse effects
21       upon members of statutorily protected group, or which otherwise cause members
22       of a protected group to be denied access to equal employment opportunities are
23       unlawful. *Wards Cove Packing Co. v. Antonio,* 109 S.Ct.2115(1989); *Watson v.*
24       *Forth Worth Bank and Trust,* 108 S.Ct. 2777 (1988).
25
26

27

7

1                                    Argument

2        The USDC in Guam has jurisdiction over the action because 1) Congress has

3    endowed it jurisdiction over any claim presented to it arising from the law that prohibits

4    discrimination; 2) The job plaintiff hopes to get absent discrimination is moving to

5    Guam; 3) The government agency involved in the action, DODEA, is present in Guam

6    and increasingly so; 4) The respondent is present in Guam and represented by the U.S.

7    Attorney; 5) Guam is reasonably close to where the alleged discrimination took place.

8    With the transfer of military units and their families from Okinawa to Guam, it is

9    reasonable to claim that the job I hope for will transfer to Guam.  I plan to follow the job.

10   The same cannot be said of Virginia.  Furthermore, the digital age has enabled regional

11   offices, like Okinawa, to access the same file that headquarters personnel have access to.

12       The policy that enabled Rhoel to insert a negative evaluation outside of normal

13   procedures opens DODEA to discriminatory practices. Roehl did not have to know I

14   reapplied unless there is somewhere a list of EEO complainants that are reapplying. For

15   Roehl to know that I was reapplying, this list must have been sent to principals named in

16   that complaint.  In my complaint of 1993, one of the principals named was Roehl.  This

17   rehiring procedure for former complainants, if revealed, is an elaborate attempt to hide

18   reprisal. The law specifically prohibits reprisal due to EEO activity and the USDC in

19   Guam is obliged by Congress to adjudicate action in this regard. .

20       The objection of Defendants to my petition to proceed *in forma pauperis* is moot

21   in that the court has already exacted and I have paid fees. Nonetheless, I would like to

22   clarify my 'employment' with the University of Phoenix that the Defendants cited. It is a

1    part-time job dependent on the number of students that enroll in my area of expertise. In

2    2005 I did not earn a single paycheck from the University of Phoenix.

3                                  Prayer

4         Please instruct the Defendants to agree to begin discovery June 1, 2006 and end it

5    August 15, 2006, and to agree to interrogatories that are signed, scanned, and attached to

6    Email.

7         Respectfully submitted on May 10, 2006 and copies furnished the Defendants.

8

9

10   Virgil M. Lorenzo

11

12

1                                  ADDENDA

2        On TAB 10 is the Email exchange I had with Edward Banca last year and my last

3    letters to him.  Please note that Banca wrote on May 16, 2005 that he was just back from

4    Guam. Guam is part of his responsibility and the Dr. Bressel,. the Area Pacific

5    Superintendent, oversees Guam.  Her main office is  Okinawa.

6        On TAB 11 is the correspondence with the USDC San Diego.  The area of the

7    white out reads "Filed  September 26, 2005, Clerk, U.S. District Court, Southern District

8    for California, By Deputy,  '05  CV 1854 BTM  (W Mc)"  When I got the letter from

9    them, I contacted several lawyers in Guam and waited in vain for one of them to take my

10   case.

11

VIRGIL LORENZO

# TAB 1

1. Dr. Greg Von Lehmen's letter to Professor Marilyn Salas, sent to me by Email on 21 May 2000. Von Lehmen has since applied for and was accepted to a position at the University of Maryland, Yokota Air Base.

2. Confirmation of self-nomination to civilian positions at Anderson Air Force Base, Guam.

21 May 2000

Professor Marilyn Salas,
Chair, Secondary Education Search Committee,
c/o Human Resources Office,
University of Guam, UOG Station,
Mangilao, GU 96923.

Dear Professor Salas:

I am pleased to endorse the application of Dr. Virgil Lorenzo for a secondary education position within your college. Dr. Lorenzo has taught on a part-time basis for the last two years in a Master of Science in the Foundations of Education that is offered by Troy State University on Kadena AB and other locations in the Pacific. I supervised his teaching and have every reason to believe that he would be a strong addition to your faculty.

Dr. Lorenzo has taught an average of three courses each year, which have included the following: the psychology of learning, the social and philosophical foundations of education, school business procedures, and school law. In addition, he has conducted numerous directed readings for individual students in these course areas. In all of his teaching for us, Dr. Lorenzo has been scrupulous in meeting all administrative requirements that are related to his courses (syllabus format, contact hours, timely assignment of final grades). His courses have a reputation for rigor, and his course evaluations, which are always average above 4.0 on a 5-point scale, reflect an appreciation for his dedication as a teacher. I would also emphasize that even though Dr. Lorenzo has had a part-time position with us, he has been willing to participate more broadly in our program by grading end-of-program comprehensive examinations and contributing ideas or suggestions to ad hoc faculty committees formed within the region to address curricular or other issues.

Finally, on a personal level I have found Dr. Lorenzo to be a balanced and well-integrated adult, who relates well with others.

Pending a change in his status, I have every intention of keeping Dr. Lorenzo involved in our program to cover appropriate courses not taught by my full-time faculty, although I understand that this may be precluded by a full-time position that he would accept with another institution. I would be willing to talk with you by phone about Dr. Lorenzo. Again, I support his application without reservation.

Sincerely,


Greg von Lehmen, Ph.D.
Director, Pacific Programs
Troy State University

🔒 THIS IS A
SECURE SITE

# Civilian Employment – **Self-nomination(s)**
**Confirmation**

Log Off

## Virgil M. Lorenzo

Thank you for your interest in Air Force Employment.

You have just self-nominated for the following vacancy announcements:

| ☑ EDUCATION PROGRAM SPECIALIST GS-1720-09 | EXTERNAL 06MAY535871 | Closing Date 05/18/2006 |
|---|---|---|
| ANDERSEN AFB (GUAM) | GUAM | |
| Career Program:  Personnel | | |
| Who May Apply:  Open to candidates with noncompetitive appointment eligibility listed below. | | |

| ☑ WORK LIFE SPECIALIST GS-0101-09 | EXTERNAL 06APR534178 | Closing Date 05/08/2006 |
|---|---|---|
| ANDERSEN AFB (GUAM) | GUAM | |
| Career Program:  Personnel | | |
| Who May Apply:  Open to candidates with noncompetitive appointment eligibility listed below. | | |

Thanks for applying with the Department of the Air Force.

## **What's Next?**

The Information above is Privacy Act Information and is protected IAW Privacy
Act of 1974 as amended.

| Home | Option Menu | Print 🖨 | ? HELP |
|---|---|---|---|

# TAB 2

1.  Return receipts from the offices of Atty Gen. Alberto Gonzales, Washington, D.C. and U.S. Atty Leonardo Rapades, Guam
2.  Return receipts from two certified mail to Robert Terzian, DODEA Counselor; receipt of certified mail to Donald H. Rumsfeld, 1000 Defense, Pentagon, Wash, D.C. 20301



■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Kimberly Felton ☑ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
Kimberly Felton  03/24/06

1. Article Addressed to:

Robert Terzian, Atty
DoD Educ. Activity
4040 N Fairfax Drive
Arlington, VA 22203-1635

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED
MAR 24 2006
Office of General Counsel

3. ☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)
7002 1000 0005 4362 0303

PS Form 3811, August 2001  Domestic Return Receipt  102595-02-M-1540

---

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $ .39
Certified Fee 2.40
Return Receipt Fee
(Endorsement Required) 1.85
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $ 4.64

NAVY
APR 04 2006

Sent To DONALD H. RUMSFELD, SEC of DEF
Street, Apt. No.;
or PO Box No. 1000 DEFENSE PENTAGON
City, State, ZIP+4 WASHINGTON, D.C. 20301

PS Form 3800, June 2002  See Reverse for Instructions

7004 2890 0001 6128 4074

---

PS Form 3811, February 2004

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Robert P. Terzian
DoDDS
4040 N Fairfax Dr
Arlington, VA
22203-1635

2. Article Number
(Transfer from service label)
7002 3150 0000 5006 1749

Domestic Return Receipt  102595-02-M-1540

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Kimberly Felton ☑ Agent ☐ Addressee
B. Received by (Printed Name) C. Date of Delivery
Kimberly Felton 03/13/06
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

---

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $ .39
Certified Fee 2.40
Return Receipt Fee
(Endorsement Required) 1.85
Restricted Delivery Fee
(Endorsement Required) —
Total Postage & Fees $ 4.64

MAY
2006
Postmark
Here

Sent To DONALD H. RUMSFELD, SEC of DEFENSE
Street, Apt. No.;
or PO Box No. 1000 DEFENSE, PENTAGON
City, State, ZIP+4 WASHINGTON D.C. 20301 DEF 1000

PS Form 3800, June 2002  See Reverse for Instructions

7005 3110 0004 1510 1891

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Ernst L. Bailey*  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  MAR 3 0 2006  C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Atty Gen. A Gonzales
US Dept of Justice
950 PENNSYLVANIA Ave
Washington D.C. 20530
2001

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7002 1000 0005 4362 0448

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  Michelle Perez  C. Date of Delivery  3/27/06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Leonardo Rapadas U.S. AH,
Sirena Plaza, 108 Herman Cortes
Suite 500, Hagatna
GUAM 96910

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7002 1000 0005 4362 0431

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

# TAB 3

On bottom page 2 and top of page 3, Berry acknowledges my advanced degree and teaching experience in DODEA schools. On the application Science and Spanish are specified as the subjects taught at Mannheim High School, Germany.

# Declaration Under Penalty of Perjury

I, Deborah M. Berry, in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, my failure to respond will result in disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal; Regulations, Sections 5.2 and 5.3; Title 5, United States Code. Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, Federal intelligence agencies, or to others as may be published in the Federal Register.*

I am currently the principal of Brussels American school, located in Brussels Belgium. I have been in this current position since 1 August 2002. Prior to this assignment I was the principal at Kadena High School from January 1997 – July 2002.

During my tenure at Kadena High School I recruited for numerous positions. It is my practice to hire teachers whenever possible who are able to teach in multiple subject areas. During the DoDDS internal transfer program in school year 1999-2000, a Spanish and Social Studies teacher received a transfer to Italy. To back fill her position I recruited for a Spanish/computer science teacher. During the same transfer round I lost a computer and vocational teacher and the home economics/Spanish teacher. The vacancy created by the computer and vocational studies teacher was filled by a transferee qualified to teach vocational studies but not the computer classes. In addition to these vacancies a teacher in computer science/CAD vocational education decided to retire. As a result, I submitted various recruitment actions during the spring of 2000, with multiple teaching categories to cover the courses needed in SY 2000-2001, i.e. Home Economics, Vocational, Computer Science, Spanish, and Social Studies. To the best of my memory, I initially recruited for a Spanish and vocational teacher to fill one vacant position.

The Spanish/vocational combination recruitment action was routed through the local personnel specialist to see if any local candidates were qualified. When no local candidates were available, the recruitment action went to the DoDEA Headquarters in Arlington, VA. I worked with the Headquarters Personnel Specialist in the selection process. As I recall Bonnie Hennessy or one of the DoDEA Headquarters personnel specialist provided me with the names of available candidates and their teaching areas.

Page _1_ of _3_ pages.                                   Initials of Declarant ___*db*___

As best as I can remember she said that a teaching husband-wife team, the Riveras might match some of the combinations I requested. The Agency tries to place husband and wife teams at the same duty station and there was a vacant position for his wife in another school in the same district, if I could use Jose. Jose was qualified to teach Spanish and computer science. Since I needed to cover both teaching areas, I considered Jose a viable candidate and changed the recruit/fill to match his teaching areas. The Personnel Specialist in Arlington offered the position to Mr. Rivera. My selection of this individual was based upon his qualifications to teach Spanish and Computer Science.

During first semester Mr. Rivera decided this position did not match his expectations and interests. He met with Mr. Doug Kelsey, the Superintendent in Okinawa and Mr. Kelsey agreed to administratively reassign him to an elementary school as a full-time computer specialist. As I remember it, Mr. Rivera did not finish the semester. With this immediate vacancy during the middle of the school year, I first looked at the island-wide substitute roster for an individual who could immediately fill the position. Ms. Dianna Mays was already appointed as a substitute on the Kubasaki substitute list; she was state qualified to teach Spanish and had experience teaching Spanish. Ms. Mays agreed to serve as a long-term substitute for Mr. Rivera. Initially, she was paid at substitute teacher pay rates. Later we converted her from her appointment at a substitute pay rate to the teacher pay scale because she was state teacher qualified. When a substitute is qualified as a teacher in the area in which the long term opening exist, then the substitute may be converted to be a teacher and compensated at a teacher wage. From the date she assumed substitute duties, she was a full day teacher of Spanish classes She resigned at the end of the school year and left with her spouse, an active duty military member.

In the spring of 2001 during the next round of recruitments for SY 2001-2002, I added a second language i.e. French to my recruitment action for a Spanish teacher, because the DoDDS requirements for graduation had been increased from no foreign language to 2 years of a foreign language. In the spring of 2001 Anne-Marie Delacroixe received a transfer from Korea to teach French and Spanish and Mr. Sergio Mendoza was hired to teach English and Spanish. The first position was filled through the DoDDS transfer round.

During my entire tenure at Kadena High School, with the exception of converting a long term substitute to a teacher position, I never recruited for a single category of Spanish only. I always requested from the local personnel office a candidate list of qualified teachers in the categories requested prior to going stateside for recruitments. Throughout my career as a principal, individuals request meetings, send emails, and letters stating their interest in teaching at the specific school. I usually look at the qualifications and direct the individual to the personnel office or to the website in order to apply for a position. In any recruitment actions I wait until I have the official list from the personnel specialist prior to conducting a formal interview. In hiring a substitute such as Ms. Mays, I selected her to sub from the existing list.

I recall that Virgil Lorenzo contacted me by letter in June 2000 stating his interest in teaching at Kadena High School. I do remember being impressed by his resume and the

Page 2 of 3 pages.

Initials of Declarant _JK_

fact that he held advanced degrees and had some previous experiences with DoDDS. With that stated, to the best of my recollection, he never was listed as qualified for any combined position for which I recruited.

END OF STATEMENT

I, <u>Deborah M. Berry</u>, declare, certify, verify, or state under penalty of perjury, that the foregoing is true and correct.

_Deborah M. Berry_ (signature)
_____
Declarant's Signature

3 Sept 04
_____
Date

Page 3 of 3 pages.

Initials of Declarant _db_

# TAB 4

On page 125, at check marks on the margins, Pruitt acknowledges that I qualified to teach Spanish per my transcripts. Copies of these transcripts were sent to Pruitt before Berry got hers in June, 2000.

I did not renew the California certification because I have a permanent, for life, teaching license with Indiana that I filed with DODEA the first time I taught for the agency in Germany.

On page 126, at check mark, Pruitt states DODEA policy of giving priority to local selection. Berry could have hired in December 2000, the more experienced teacher if she wanted to.

# DoDEA

DEPARTMENT OF DEFENSE EDUCATION ACTIVITY
PERSONNEL CENTER
4040 N. FAIRFAX DRIVE
ARLINGTON, VA 22203-1635

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Sheila R. Dixon | SENDER: Jacqueline A. Pruitt |
| COMPANY: Dodds-Horin | DATE: August 21, 2003 |
| FAX NUMBER: 757-886-9557 | TOTAL NO. OF PAGES INCLUDING COVER: 24 |
| PHONE NUMBER: | SENDER'S PHONE NUMBER: 703-696-3081    ext.: 2644 |
| | SENDER'S FAX NUMBER: 703-696-2699 |

Reference: Agency # PE FY-02-06

NOTES/COMMENTS

Sheila —
As requested —
Attached Declaration — Virgil M. Lorenzo

*122*

# DECLARATION UNDER PENALTY OF PERJURY

I, Jacqueline Anne Pruitt in accordance with 28 U.S.C. Section 1746, make the
(print full name)
following statement:

*EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, my failure to respond will result in disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CRF 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

1. Do you currently work for the federal government? If yes, what are your current position title, job series, and grade?
**ANSWER: Yes.  Personnel Staffing Specialist GS-0212-12**

2. What federal activity do you work for and how long have you been there?
**ANSWER:  Department of Defense Education Activity – Since May 6, 1991.**

3. Prior to that what federal activity did you work for and what were your position title, job series, and grade?
**ANSWER:  Dept of Navy – Secretariat HQ-CPO – Personnel Assistant GS-318-9**

4. How long were you in that position? Give dates.
**ANSWER:  December 11, 1989 to May 6, 1991**

5. State your race.
**ANSWER:  Caucasian**

6. State your color.
**ANSWER:  White**

7. State your national origin.
**ANSWER: US citizen**

8. State your age and date of birth.

Page 1 of 8                                    *123*                  Declarant's Initials 

ANSWER: 59 - September 19, 1943

9. What was your involvement in Complainant's prior EEO activity that he is basing reprisal on for this complaint?
ANSWER: I had no involvement in Complainant' prior EEO activity. I was unaware of any previous EEO activity prior to receipt of the letter dated August 7, 2003.

10. If you had no involvement in Complainant's prior EEO complaint activity, how and when were you made aware of his prior EEO activity?
ANSWER:   Prior to reading the letter dated December 5, 2001 from Mr. Lorenzo, I was unaware of any previous EEO activity.

11. What is/was your work/organizational/professional relationship to Mr. Virgil Lorenzo, Complainant, and how long has it existed? (Give dates)
ANSWER: My professional relationship to Mr. Lorenzo is that his application for employment was reviewed by me at some point. File documents indicate that my first involvement with this application was in March 2000. In a letter dated March 27, 2000, I acknowledged receipt of his application and requested additional information, including copies of his transcripts, to complete his application. (TAB 1)  According to the Teacher Recruitment System, then the Agency's automated application system, someone in the Professional Educator Rating and Certification Unit (PERCU) entered whatever of his application data was on file into that system on February 28, 2000. (TAB 2) At this time PERCU was rating thousands of applications.  The normal trigger to rating an application would have been the receipt of the necessary transcripts to complete the rating. The next time the file documents reflect my involvement was on January 22, 2001, when I advised him by email that his California state teaching certificate had expired. It expired on June 1, 1996. I also requested a current state certificate, and advised him that the Agency requirements for Spanish teacher had changed. (TAB 3)  On March 18, 2001, I sent a follow-up email to Mr. Lorenzo again advising him that his California State certificate had expired, that the Agency had not received the Indiana State Certificate that he had described in emails dated January 22, and March 9, 2001, and explained that he lacked 6 semester hours to meet DoDDS requirements to teach Spanish and a course in methods of teaching composition required to meet DoDDS standards to teach English.  I requested he send additional information. (TAB 4)  On March 19, 2001, the Indiana Professional Standards Board sent a fax to the PERCU, addressed to me, attaching a copy of Mr. Lorenzo's Indiana State Certificate that qualified him to teach English Middle and Secondary, and World Civilization. That data was entered into the TRS data base sometime after March 23, 2001, because a print-out of the March 23rd TRS data reflected that Mr. Lorenzo was not qualified to teach Middle School English, Secondary English or Spanish. The TRS was modified on April 3, 2001 to reflect state qualification in English, Middle and Secondary School. (TAB 5)  On September 26, 2001 I received a fax from Lorenzo Cruz, who was then performing personnel staffing duties in Okinawa. He asked if HQ would accept Mr. Lorenzo's State of Indiana certificate reflecting World Civilization as sufficient credential to qualify him to teach Social Studies in DoDDS. (TAB 6)  I do not recall responding to this inquiry and there is no documentation on file indicating that this would be acceptable.

*124*

Declarant's Initials [signature]

*EXHIBIT A*

12. What is/was your work/organizational/professional relationship to Mr. Lorenzo Cruz and how long has it existed? (Give dates)
**ANSWER: We both are personnel specialists assigned to the Certification Unit since 1991.**

13. What is/was your work/organizational/professional relationship to Dr. Deborah Berry and how long has it existed? (Give dates)
**ANSWER: I have never met or recall ever speaking to Dr. Berry.**

14. If you currently work for the federal government, who is your immediate or first-line supervisor and how long has he/she been so? (Give date.)
**ANSWER: Patricia Lesjak Davis - 1997**

15. If you currently work for the federal government, who is your second-line supervisor and how long has he/she been so? (Give date.)
**ANSWER: Leonard Bransford January 26, 2003. During June 2000-2001, Nancy Roddy and during 2002-Hayden Horne**

16. Complainant has alleged as discrimination and reprisal that on November 21, 2001, during a meeting he had with Dr. Deborah Berry he found out that he was not referred for the Spanish Teacher position for which he applied on June 7, 2000, and personnel did not inform him that the standards had changed for him to qualify. What can you tell me about this matter?
**ANSWER: I was not in the meeting with Dr. Berry. I do not have specific knowledge of the position he is referring to and when he was not considered for it. I had not received Mr. Lorenzo's transcripts with his application in February 2000. It is not clear when those transcripts arrived. They were in his file when I wrote to him on March 18, 2001, because I was able to then tell him that he lacked credits to meet the November 2000 DoDDS Spanish language certification. Mr. Lorenzo's California State certificate reflecting state certification as a Spanish teacher expired on June 1, 1996. I do not know when his transcripts actually arrived in his application file. The transcripts currently on file indicate that he would have met DoDDS academic standards to teach Spanish in June 2000. In November 2000 DoDDS requirements changed. Mr. Lorenzo did not meet the new requirements. Accordingly, I informed him of the change in the standards in emails in January and in March 20001. (TABS 3&4) An April 25, 2001 print-out of his application in the TRS data base, after the new Spanish teacher standards went into effect reflected he was state qualified to teach English and not qualified to teach Spanish.**

17. Were you also present in this meeting? If yes, who else was present?
**ANSWER: No. See #16**

18. During that meeting what was Complainant given as the reason for not referring him for the Spanish Teacher position and by whom?
**ANSWER: See #16**

*125*

Declarant's Initials _____

19. At the time Complainant was not referred, in what way did he fail to meet the qualifications for the Spanish Teacher position and when were these qualifications changed?
**ANSWER: See #16**

20. Whose responsibility was it to notify Complainant of the qualification changes and how are such notifications usually made?
**ANSWER: Each applicant is responsible for keeping up with changes in qualification standards. It is not possible for the Agency to notify each applicant individually when changes are made. Changes are published on the DoDEA website www.odedodea.edu. In an email dated January 22, 2001, I informed Mr. Lorenzo of recent changes to DoDEA requirements and that his application was being reviewed again to determine qualifications under new standards. In December 2001 the Personnel Director advised Mr. Lorenzo in a letter that DoDDS had adopted a new automated personnel application database, Employment Application System (EAS) (which was on line in September 2001) that for the first time allowed applicants to access and update their own files electronically. (TAB 7)**

21. What is the process that an application goes through to determine if the applicant qualifies for a teaching position OCONUS?

**ANSWER: Basically the same procedure was followed for both CONUS and OCONUS applicants. Prior to September 2001 applicants submitted hard copy applications. The application information was entered into the TRS database by PERCU assistants. The file was then assigned to a certification specialist to determine qualifications for the positions applied for. The results were then entered into the data base. Based upon this information, the Recruitment Unit issued referral lists for vacant positions. In September 2001 we went to the new EAS on line system allowing applicants to file their applications and update them at will electronically. The preparation of referral lists was sent overseas some time in 2000, I believe. I do not know if the referral list for the position that Mr. Lorenzo applied for in June was issued overseas or in HQ. Locals always have selection priority. If no qualified local candidates are available then CONUS applicants are considered.**

22. In what way does this process differ when an applicant applies for a position within CONUS?
**ANSWER: Same procedures are followed as above**

23. Was Complainant's name on the referral list for the Spanish Teacher position for which he applied on June 7, 2000?
**ANSWER: See #16**

24. If no, who is responsible for assuring qualified applicants' names are on referral certificates?
**ANSWER: The Recruitment Unit at HQ or the after the transfer to overseas, the personnel specialist overseas.**

25. If Complainant's name was not on the referral list had he made you aware of his interest in the position? If yes, when did he do so (Give date) and what was your response?

Page 4 of 8                        *126*                        Declarant's Initials

**ANSWER:** Attached to a letter dated December 5, 2001 to Paul Wolfe from Mr. Lorenzo was a copy of a letter dated June 7, 2000 addressed to Dr. Berry from Mr. Lorenzo. In the letter to Dr. Berry Mr. Lorenzo expressed interest in a Spanish position. Prior to reading a copy of the December 7 letter to Paul Wolfe, I was not aware of Mr. Lorenzo's interest in the Spanish Teacher position for which he applied on June 7th.

26. Records reflect that by letter dated June 7, 2000, Complainant informed Dr. Berry of his interest in applying for the Spanish Teacher position at Kadena High School, and provided her a copy of his DODDS certificate and list of other positions he was interested in. Did he or Dr. Berry also provide you a copy of that letter? If yes, what action did you take with respect to it?
**ANSWER: No. See #25**

27. Once Complainant made Dr. Berry aware of his interest in the Spanish Teacher position and that he was on the list of locally available teachers, could she have selected him for the position without having him referred on a selection certificate? If yes, what would she have needed to do in order to select him in that manner?
**ANSWER: I don't know.**

28. If Dr. Berry could have selected Complainant as a local hire without having him referred on a certificate; did she express any interest to you in hiring him in that manner? If yes, when and what did you tell her?
**ANSWER: No**

**29.** Were there any applicants who were referred for selection consideration based on the qualification requirements that were in effect before the change in qualifications took place? If yes, give those persons name, race, color, national origin, age and state whether or not they had any prior EEO activity.
**ANSWER: Referral lists are issued by the Recruitment Unit. I do not have any knowledge of this.**

30. Specifically, what bearing did Complainant's race, color, national origin, age or prior EEO activity, have on his not being referred for the Spanish Teacher. Explain your response.
**ANSWER: None that I am aware of.**

31. Specifically, what bearing did Complainant's race, color, national origin, age or prior EEO activity have on his not being inform that the standards had changed for him to qualify for the Spanish Teacher position? Explain your response.
**ANSWER: None that I am aware of.**

32. Who was selected for the Spanish Teacher position and what are that person's race, color, national origin, and age? Did the person have prior EEO activity? What was the selection based on?
**ANSWER: I don't know**

33. Who was the selecting official?
**ANSWER: I don't know**

*127*

Declarant's Initials

34. Complainant has alleged that as discrimination and reprisal that on August 2, 2002, he found out that neither you nor Mr. Lorenzo Cruz, Teacher Recruiters for Okinawa referred him for the Social Studies/English Teacher positions that opened in June 2002, that were available at Lester/Kadena Middle Schools, for which he had applied. What can you tell me about this matter? ···
**ANSWER:** See #29

35. Why wasn't Complainant referred for selection consideration?
**ANSWER:** See #29

36. What was your involvement in Complainant not being referred for the Social Studies/English teacher positions that were available at Lester/Kadena Middle Schools?
**ANSWER:** See #37

37. In February 2001, did you dispute Complainant's qualifications for Social Studies and refuse to put him on the referral list through the months of February through August? If yes, why did you dispute his qualifications, which were based on an endorsement in World Civilization (Social Studies) by the Indiana Professional Standards Board?
**ANSWER: I did not rate his qualifications for Social Studies. He did not initially apply for social studies and I had no reason to rate him for this. The fact that I received a letter from Mr. Cruz dated September 26, 2002, asking if Indiana's state certificate reflecting World Civilization would be acceptable indicates that he was being rated overseas. I do not recall responding and the file does not reflect any correspondence from me.**

38. Did you eventually accept his qualifications for Social Studies Teacher? If yes, when and what did you base your acceptance on?
**ANSWER:** See 37

39. Did you wait until after the crucial time frame of February to August 2001 to accept Complainant's qualifications as a Social Studies Teacher? If yes, why?
**ANSWER:** See 37

40. Specifically, what bearing did Complainant's race, color, national origin, age, and prior EEO activity have on your disputing his qualifications between the months of February and August 2001?
**ANSWER:** None. See 11 and 37

41. Did you have other applicants whose qualifications for teaching positions outside OCONUS that you also disputed? If yes, who and what are their race, color, national origin and age and did any have prior EEO activity?
**ANSWER: I may have disputed other applicant's qualifications, but I cannot say without retrieving many files over many years. I would not have known their race, color or national origin as this data is not required on the application file. I did not dispute qualifications based upon race, color, national origin, age, or gender.**

42. After August 2001, did you refer Complainant for Social Studies vacancies that became available in the locations he specified? If yes, which ones and when? If no, why not?
**ANSWER: See #29**

43. If Complainant should have been referred for future Social Studies vacancies, why wasn't he referred for the Social Studies/English Teacher position that opened in June 2002 at Lester/Kadena Middle Schools?
**ANSWER: See #29**

44. Who was selected for the English/Social Studies positions at Lester/Kadena Middle Schools in June 2002 and what are their race, color, national origin and age? Did either person have prior EEO activity?
**ANSWER: I don't know**

45. Specifically, what bearing did Complainant's race, color, national origin, age, and prior EEO activity have on his not being referred for the Social Studies/English Teacher positions at Lester/Kadena Middle Schools? Explain your response.
**ANSWER: See 29**

46. What additional information do you have to provide that you believe is pertinent to the investigation of the claims accepted for investigation in this complaint?
**ANSWER: None**

**Between April 2000 and the time the new licensure standards became effective in November 2000, DoDDS was authorized to hire an educator who met the DoDDS standards in effect prior to November 2000 or who met state qualifications. The state qualified candidate would have to meet DoDDS standards within 2 years. (TAB 8)**

**In the application file there is a letter dated February 6, 2002 from Hayden Horne on behalf of Paul Wolfe to Virgil Lorenzo responding to a letter from Virgil Lorenzo to Paul Wolfe dated January 7, 2002 stating that he was not selected for a Spanish teacher position at Kadena HS in June 2000 (TAB 9). Mr. Horne's response stated that between March and October 2000, the Personnel Center received only one request to fill a Spanish vacancy for the Okinawa District. The vacancy was for a combination Teacher, Spanish and Teacher Computer Science at Kadena HS. The letter also stated that Mr. Lorenzo was not referred for this position because he did not meet qualifications requirements for Teacher, Computer Science.**

I, _Jacquline A. Pruitt_ state under penalty of perjury, under the law of the United States of America, that the foregoing is true and correct.


_Jacquline A. Pruitt_                                    _August 21, 2003_
(Declarant's Signature)                                        (Date)


Page 7 of 8                          *129*                    Declarant's Initials _JAP_

130

Declarant's Initials

# TAB 5

On page 2, item 11, Pruitt talks about 'hot boxes' and how she would drop everything else to get those files done.  Then on item 13, she writes of being overwhelmed by her workload.

This is an environment conducive to losing files and one reason why I provided Berry copies of everything. If she wanted to, Berry could have called Pruitt.

# Declaration Under Penalty of Perjury

I, Jacqueline Anne Pruitt , in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, my failure to respond will result in disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal; Regulations, Sections 5.2 and 5.3; Title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, Federal intelligence agencies, or to others as may be published in the Federal Register.*

I previously made a declaration in this matter. The Agency Counsel asked me to supplement my previous answers.

P1
1.    Please paint a picture of the work in your office during the period January through October 2001

     Typically I read e-mails early and responded - we are supposed to response within 24 hours. Then handle any certification/recertification requests and CONUS/Local applicant files for our assigned areas. We have to drop everything when we get a "Hot Box" from recruitment for CONUS hires (from March to August) I must respond to similar requests from local areas for local hires - a final qualifications review. I was also responsible for administering the Educational Leave Program. Typically we put out fires - whatever is "hot" at the moment because of the heavy volume.

2.  How many pieces of paper might you have to touch in a day?
     Hundreds

3.  How many different applicant files?
     Thousands at that time.

4.  When you received a transcript, what did you have to do with it?

     Transcripts are received everyday - the clerks opened the mail in batches and then would have to check to see if the incoming transcript was for an applicant or current educator. These were divided by

Alphabet for the clerks and assistants. They would then try to match them with any existing file. This took weeks sometimes.

5. If a person had applied for three teaching areas, such as Spanish, and English middle and high school, what data did you have to verify before you could determine qualification? How many credits and how would you know if a credit on the transcript was one that qualified as one supporting English or Spanish, or for that mater, social studies.

Prior to the latest guidance of accepting state certificates, (starting in April 2000) we would have to review the transcripts and evaluate for each category requested to see if the person met DoDDS qualifications. We go by the "Apple Book" Overseas Employment Opportunities for Educators" brochure – each teaching category has separate requirements. We would determine by evaluating the transcripts against these requirements. Even with acceptance of state certificates there is certain criteria that must be met. We have to verify the certificates with the states as their requirements are different, and we must try to match those categories with DoDDS.

6. When would you perform the evaluation of transcripts after they had come in?

When the assistants felt the file was complete enough for the specialist to review it was given to the specialist. The file would have had to contain transcripts and be complete enough to review. If it was incomplete the assistant would go to other completed file to give to the specialists for review.

7. How did you prioritize which application you would process first? Was it on a first come first serve basis/ on the basis of a person applying for a critical or hard to fill area / on the basis of how well the person's evaluations were / on some other basis?

Generally speaking, this was not a first come first serve. The most complete applications – those with enough information to actually evaluate transcripts, etc were looked at first. Recruitment would run lists sometimes looking for critical (shortage) areas – and give to Certification Unit to review to try to fill. I did not look at evaluations – only the transcripts and supporting documentation to determine qualifications.

9. Did you ever find tasks that you had intended to do that you "discovered" some time later remained undone?

Yes, we were/are routinely interrupted by "hot" issues, etc.

10. Was that a common event?

Yes

11. If so, what would have contributed to such an occurrence?

From March – August we are working on "hot boxes" – they take priority. Applicant files are given to us by recruitment for tentatively hired educators. We must make a final "quals" check before actual hire. Everything else is dropped until those files are done.

They are given to us daily as hired. We also review transfer requests for qualifications which is a priority.

12. Was Lorenzo's file a low priority file? If so, why?

No, Mr. Lorenzo's file was treated like any other file. If any file was deemed incomplete it would be looked at as quickly as one that we could actually rate/evaluate. I would not routinely go through all the thousands of applications unless something prompted me to do so.

13. Was there anything that indisposed you to promptly relying to Lorenzo? If so, were there others who you similarly felt less inclined to respond to?

No, the unit was overwhelmed by the heavy workload - and the paperwork received was overwhelming. We receive hundreds of e-mails, faxes, and individual pieces of mail every day. All of these have to be matched with files. The volume of applications received (thousands) and all the paperwork associated with those applications which came in piece meal slowed down the processing of applications and our response time to everything. This is why we had to go to the new EAS application system. We could not keep up with the heavy workload.

If an applicant did not submit enough information initially to rate the application, the specialists had to move on to applications that were complete enough to rate.

An incomplete application could not be rated as quickly, a high priority that day could push another applicant aside.

14. On Jan 5, it appears that Bonnie Hennessey forwarded Mr. Lorenzo's inquiry about the status of his application to the "Okinawa certification specialist". Who was that person?

It could have been me, or Barbara Harris. She handled Okinawa at some point.

15. Do you recall receiving such an inquiry from Bonnie?
No.

16. It appears that you meant in your 1/22 e-mail to Mr. Lorenzo that the Spanish requirements had changed and you were looking again at his transcripts to see how many Spanish credits he may have had. Is that correct?

Yes, that is correct.

17 If it is, then you would not have had to make any change in the TRS because he was already listed as NQ. So would you likely have returned his application to the files?

Yes

18. How many inquiries from applicants did you receive on a daily basis?

Initials of Declarant

Hundreds.

19.  Did you respond to each inquiry?

     No, it would be impossible to answer all and still be able to
evaluate files complete enough to rate.

20.  Mr. Lorenzo sent you a message on 1/26, saying he was anxious to
hear from you.  Is it common not to respond to such inquiries
immediately?

     All applicants are anxious to hear - we received daily phone
calls, e-mails and faxes checking on the "status" of applications. This
is why we had to go to the automated system EAS.  We could not keep up
with the thousands of applications, etc.

21.  He also says in his 2/6/021 e-mail that his license is being
endorsed for Business Education, Spanish and Latin.  Would that
information have been enough for someone to change the TRS to add those
as areas of interest, or would you have needed something more?  If
more, what?

     No.  We would have to have the actual license.

22.  Isn't it the case that Indiana never sent anything certifying him
for business, Latin or Spanish?

     Yes

23.  His Valentine message appears to have been faxed.  You did receive
that message, yes?
     That message is in his file, but I do not know when it was
received.

24.  In his Valentine message 01, he seems to be disturbed that he sent
some kind of an endorsement, but it was invalid because it was attached
to an expired license.  He says if he had been informed that it had to
be attached to an unexpired license he would have asked Indiana to send
it.  His statement implies that he had had a conversation with someone
who told him that his endorsement was no better than his expired CA
license.  Do you have any idea if you and he had a conversation about
that?   If not, so you have any idea to whom he might have talked who
would have told him -- or failed to tell him -- that he had to attach
his endorsement to a current license?

     I have never had a conversation with Mr. Lorenzo.  I did not have
this conversation with him.  He may have spoken to someone in the
Pacific - I do not know, and I really don't understand what he is
referring to.

25.  He also asked if you could process his application with the
knowledge that the Business Ed endorsement will be added to his English
major. Again, it implies that he had the impression that his
application was not being "processed".  Do you have any idea what he is
referring to?

No, I do not. I would not rate him as being qualified unless he met DoDD qualification requirements OR presented a valid state certificate.

26. Would you in Feb 01 normally "process" an application based upon a statement that an endorsement was coming? Is there a difference in the way an application might reflect credentials in the TRS and the EAS?

No, I would not rate him as qualified unless it met the qualification requirements for DoDDS OR presented a valid state certificate. EAS allows an educator to self-certify – but at the time of a job offer he would have to present the state certificate or transcripts documenting his qualification for the position.

27. Would you automatically change his list of teacher categories if you determined that he was certified to teach something not on his application?

Under TRS system applicants would have to specify the category they wanted to be considered for. It is not a correct assumption that every category on a state certificate is one that an educator may want to teach. EXAMPLE: some educators are certified in Special Education, but they may feel burned out and only want to teach regular education.

If the state certificate was valid or transcripts evaluated to determine qualification, the rating would be changed if he requested certification.

28 Was it reasonable from all the communication he sent that he was expecting you to add these various areas to his application?

I don't know. It appears that he was communicating with various people in the field about which categories he wanted to be considered for and that seemed to have changed as time went by. Our qualification requirements changed, and responsibility for local hires also changed about the same time.

29. Do you think that it was intentional or accidental that his TRS entry was not updated to add Social Studies?

Certainly unintentional

30 If it was an accident, please explain why you think so.

The heavy workload and the piece meal submission of documentation, the many people handling all the paper could contribute to delays in processing or updating the system. Data could have been entered incorrectly. We have had instances of TRS data dropping after it was entered. This can be verified by anyone working on TRS systems.

31. Since responsibility for local hires had been delegated to the field in Feb, did you give less thought in general to local candidate inquiries?

Page 6 of 6 pages.

At that time my area of responsibility changed to the evaluation of CONUS hires and my time and energy was directed toward that as priority.

32. Did you think that Lorenzo Cruz would handle it when he arrived in April?

The responsibility of local hires was sent to the field. Our assistants and clerks were directed to send these files to the field. I did think that it was being handled in the field as directed.

33. If so, was it reasonable to defer any response until Lorenzo Cruz got to it?

Yes.

34. Did you feel less "entitled" to do local hire paperwork after you knew that someone in the field was supposed to handle it -- like maybe if you did something you would be stepping on someone else's territory?

Yes. I still maintained a heavy workload with CONUS hires and certification evaluations.

35. In a letter to Principal Berry on Nov. 21, he seems to think that you will be adding his new quals to his application. Do you know why he might think that you had that responsibility?

No.

36. On September 26, do you recall getting an inquiry from Cruz whether Lorenzo's World Civilization qualified him for social studies?

A copy of this fax is in the file

37. What did you do with that inquiry? Why?

I don't remember. I don't see a response in the file. It's possible that I could have responded via e-mail but a copy never got filed. It is also possible that I may have spoken to Mr. Cruz as he sometimes called the office for information.

I, _Jacqueline Anne Pruitt_____, declare, certify, verify, or state under penalty of perjury, that the foregoing is true and correct.


_Jacqueline A Pruitt_
Declarant's Signature

_September 17, 2004_
Date

# TAB 6

On top of page 241, when asked about Secondary Spanish, the position she was eventually hired to fill at Kadena High School, Mays answered 'no' twice, to the questions of being interested in Secondary Spanish and being State certified.

*Exhibit A*

## EAS Application

**Applicant Information**

|                    |               |
|--------------------|---------------|
| Name Prefix        | Ms.           |
| First Name         | DIANNE        |
| MI                 | C             |
| Last Name          | MAYS          |
| Suffix             |               |
| SSN                | 230298185     |
| Email Address      |               |

**Status Information**

|                      |       |
|----------------------|-------|
| Applicant Class      | Local |
| Troops To Teachers:  | N/A   |

Are you a US citizen?

|                              |            |
|------------------------------|------------|
| Date of Birth                | 05-18-1968 |

Veteran's Preference?

Verified Veteran's
Preference:

**Current Address**

|                    |                   |
|--------------------|-------------------|
| Address (line 1)   | PSC 80 BOX 17063  |
| Address (line 2)   |                   |
| City               | APO               |
| State              | AP                |
| Zip Code           | 96367             |
| Country            | OKINAWA           |
| Home Phone         | 816117330167      |
| Work Phone         |                   |

**Voluntary Information**

Source Learned of
DoDEA

**Target Jobs**

| Job Interested In | National Board/ | Education Degree with Major Related | Course |
|-------------------|-----------------|-------------------------------------|--------|

**240**

|  | State Certified | to Field | Description |
|---|---|---|---|
| Secondary Spanish | no | no | |

## Availability

| | |
|---|---|
| For which School Year do you wish to be considered? | 2001 - 2002 |
| Availability Date | |
| Date of Expected Rotation (DEROS) | |
| In which city would you like to be interviewed? | |

## Interest Area

| | |
|---|---|
| Are you on sponsor's orders? | No |
| Spouse's Military Involvement | |
| Schools in which you are interested | Kubasaki HS |

## DoDEA Use Only

| | |
|---|---|
| Has had an Interview? | No |
| Name of Interviewer | |
| Interview Score | |
| Would you hire? | |

## Education

| College Name | City | State/Territory | Zip | Major | Degree Received | Date Received |
|---|---|---|---|---|---|---|

No colleges are currently entered.

## Skills/Activites

| | |
|---|---|
| Highest Level of Education Completed | |
| Additional Training Experience | |
| Extra-Curricula Activities | |

Other Qualifications



Teaching Experience

| | |
|---|---|
| 7+ years of teaching experience? | No |

Certification/Licenses

| | |
|---|---|
| National Board Certified? | No |
| Educator License Type (State/Territory received) | Virginia |
| Exempt from PRAXIS tests | No |
| Meet the DoDEA PRAXIS requirements | No |

Test Scores

| Test Taken | Score |
|---|---|
| Computer-Based Testing (CBT): Reading | 331 |
| Computer-Based Testing (CBT): Math | 327 |
| Computer-Based Testing (CBT): Writing | 326 |

Work Experience

| School/Place of Employment Name | Job Title | From | To | Supervisor's Name | Supervisor's Phone Number | Sent the Salary Verification form (DS Form 5013)? |
|---|---|---|---|---|---|---|

Teaching License Information

Has your teaching license ever been revoked?

License revoked explanation

Defense Domestic Elementary and Secondary Schools (DDESS) Information

Currently teaching for DDESS?

Current DDESS position and location

242

Department of Defense Overseas School System (DoDDS) Information

Currently Part-time DoDDS
Employee?

Current or Previous
DoDDS Student Teacher?     No

Former DoDDS Employee?     No

If Former DoDDS -
Last Year Employed

If Former DoDDS -
School Name

Federal Civilian Employee (FCE) Information

Are you a Federal
Civilian Employee (FCE)?

If FCE -
FCE Series

If FCE -
FCE Grade

If FCE -
FCE Date From

If FCE -
FCE Date To

If FCE -
Are you eligible for
reinstatement based on
career or career-conditional
Federal status?

Professional Evaluations

| Last Name | First Name | MI | Online Evaluation | Eval Score | Phone Number | Email |
|---|---|---|---|---|---|---|
| Professional Eval | Professional Eval | | no | 2 | | |

For DoDEA Use Only

Evaluation Score Average = 2.00

DoDEA Use Only

Overall Comments                    Eval 1 Gladys Brignoni



TAB 7

# State of Indiana

## Teacher's License

The State of Indiana in accordance with Indiana statutes and promulgated rules and regulations of the Indiana Professional Standards Board hereby grants the person named hereon a license to teach those subjects or to serve in the School Services or Administration areas as specified hereon.

License: 704694

**Issued:** February 12, 2001

Degree: DOCTORATE

**Expires:** LIFE

## Virgil Lorenzo

| | | |
|---|---|---|
| **MAJOR** | | 7-12 |
| **MINOR** | | 7-12 |

ENGLISH
WORLD CIVILIZATION

PROFESSIONAL

BULLETIN 400
ADDITION

SECONDARY

_David W. Kissinger_
Interim Executive Director

_Joseph J. Wag_
Chairman

It is the teacher's responsibility to become informed of the requirements for renewal and/or professionalization as prescribed by statute and the Indiana Professional Standards Board. Furthermore, the teacher is responsible for providing all such evidence of eligibility to the issuing authority.

Any erasure, change or mutilation of this license renders it null and void.

e Form 129 (R/76-557)

138

# TAB 8

On page 4, under professional evaluation, Roehl is designated as my former DODDS supervisor. He never was and Roehl couldn't prove it when challenged. in 2005. The evaluation was conditionally dropped and my request for permanent deletion rejected because Roehl continues to insist he 'vaguely remembers' me, according to Banca.

Between 2001 and 2005, Roehl effectively blocked my application by enabling principals to quietly de-select me.

# SF-5010 Personal Data



**Applicant Information**

App Loc. Class: L        Year Consider: 2001/2002

SSN: ▮▮▮▮▮        DOB: 2/23/45

Last Name: LORENZO        First Name: VIRGIL

Middle Initial: M    Prefix: Mr.    Suffix:

Date Entered: 02/28/2000
Date Modified: 01/24/2001
Date Viewed: 03/18/2001
Modified By: ncoates
Status: A

**Current Address**

Street 1: PSC 559 BOX 5488

Street 2:

City: FPO        State: AP

Zip: 96377    Country: OKINAWA

Phone: h: 81989657813    w:

E-Mail:

**Permanent Address**

Street 1:

Street 2:

City:        State:

Zip:    Country:

Phone:

**Spouse Information**

Name: LORENZO TERESITA

Rank: DODDS/BECHTE

Phone:

**Interview Site**

**Interview Score**
○ Yes  ◉ No

**Voice Poll Score**
0

**National Board Certified**
◉ No
○ Yes

**Educator Licence Type:**

**PRAXIS Scores**

| | PPST | PLT |
|---|---|---|
| PK 0 | Reading 0 | PLT K-6 |
| CS 0 | Writing 0 | PLT 5-9 |
| | Math 0 | PLT 7-12 |

**CBTScores**
Reading 0
Writing 0
Math 0

**Exempt from PRAXIS**
◉ No
○ Yes

**Met PRAXIS**
◉ No
○ Yes

# SF-5010 Pers./Geo. Data

| Name LORENZO, VIRGIL | SSN 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 |
|---|---|

## Personal Information

Personal Category Code: FM   Travel Orders Received: Y: ○ N: ⦿   Troops-to-Teachers: Y: ○ N: ⦿

Work Schedule:   Student Teacher: Y: ○ N: ⦿   Geo Pref Received: Y: ○ N: ⦿

Appointment Status:

Veteran's Preference:   DDESS candidate: Y: ○ N: ⦿   Transcripts Received: Y: ⦿ N: ○

Availability Date:   DEROS Date:

## Geographic Codes

| | | | | |
|---|---|---|---|---|
| Geo. 1: 7647 | Geo. 5: | Geo. 9: | Geo. 13: | Geo. 17: |
| Geo. 2: | Geo. 6: | Geo. 10: | Geo. 14: | Geo. 18: |
| Geo. 3: | Geo. 7: | Geo. 11: | Geo. 15: | Geo. 19: |
| Geo. 4: | Geo. 8: | Geo. 12: | Geo. 16: | Geo. 20: |

## Comments

# SF-5010 Cat./Vol. Data

Printed: 04/25/2001
Page 3

| Name | LORENZO, VIRGIL | SSN | 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 |

### Category and Status Codes

| Cat. 1 | 0210 | Rating 1 | SQ | Cat. 10 | | Rating 10 | |
| Cat. 2 | 0310 | Rating 2 | SQ | Cat. 11 | | Rating 11 | |
| Cat. 3 | 0374 | Rating 3 | NQ | Cat. 12 | | Rating 12 | |
| Cat. 4 | | Rating 4 | | Cat. 13 | | Rating 13 | |
| Cat. 5 | | Rating 5 | | Cat. 14 | | Rating 14 | |
| Cat. 6 | | Rating 6 | | Cat. 15 | | Rating 15 | |
| Cat. 7 | | Rating 7 | | Cat. 16 | | Rating 16 | |
| Cat. 8 | | Rating 8 | | Cat. 17 | | Rating 17 | |
| Cat. 9 | | Rating 9 | | Cat. 18 | | Rating 18 | |

### Former DoDDS Employee

Yes ⊙  No ○    Year last employed: 1994    School: Mannheim HS

### Source Learned of DoDEA

| Source1 | 65 | Other1 | FORMER DODDS TEACHER |
| Source2 | | Other2 | |
| Source3 | | Other3 | |

Case 1:05-cv-00035    Document 10-3    Filed 05/17/2006    Page 18 of 28

# SF-5010 Additional Data

Printed: 04/25/2001
Page 4

Name LORENZO, VIRGIL            SSN 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

## Additional Training/Experience

| | | |
|---|---|---|
| Code1: | Code2: | Code3: |
| Code4: | Code5: | Code6: |
| Code7: | Code8: | Code9: |
| Code10: | Code11: | Code12: |
| Code13: | Code14: | Code15: |
| Code16: | Code17: | Code18: |
| Code19: | Code20: | Code21: |
| Code22: | Code23: | Code24: |

## Extra-Curricula Activity Codes

| | | |
|---|---|---|
| EC1: | EC2: | EC3: |
| EC4: | EC5: | EC6: |
| EC7: | EC8: | EC9: |
| EC10: | EC11: | EC12: |
| EC13: | EC14: | EC15: |
| EC16: | EC17: | EC18: |
| EC19: | EC20: | EC21: |
| EC22: | EC23: | EC24: |

## Professional Evaluation

Evaluation #1:

Evaluation #2:

Evaluation #3:

Average:

Recommend for hire: ○ Yes   ● No

Comments: Former DoDDS supervisor, Frank Roehl, does not recommend him for rehire.

Case 1:05-cv-00035    Document 10-3    Filed 05/17/2006    Page 19 of 28

TAB 9

# SUMMARY EVALUATION REPORT

FORM NO. DS1011

SAN DIEGO UNIFIED SCHOOL DISTRICT

## CLASSROOM TEACHERS

Reference    District Procedure No. 7355 and Performance Evaluation Manual

| Employee Name | Soc. Sec. Number | Location Name | | Cost Center |
|---|---|---|---|---|
| LORENZO, VIRGIL | 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 | Morse | | 352 |

| Title Subject Area or Grade Level | Employee Status | If Unscheduled Report Check Here | Due Date |
|---|---|---|---|
| BUSINESS EDUCATION | Temp | ☐ | |

## SECTION I: EVALUATION COMPONENTS

Components are described in the Manual. If any components are marked "Unsatisfactory" or "Requires Improvement," <u>Performance Evaluation Addendum</u> must be completed.

| Unsatisfactory | Requires Improvement | Effective | |
|---|---|---|---|
| ☐ | ☐ | ☒ | 1. Progress of students toward established standards |
| ☐ | ☐ | ☒ | 2. Instructional techniques and strategies. |
| ☐ | ☐ | ☒ | 3. Adherence to curricular objectives. |
| ☐ | ☐ | ☒ | 4. Establishment and maintenance of a suitable learning environment. |
| ☐ | ☐ | ☒ | 5. Performance of non-instructional duties and responsibilities. |
| ☐ | ☐ | ☒ | 6. Achievement of stated objectives. |

## SECTION II   COMMENTS BY EVALUATOR (See Evaluation Manual)

Mr. Lorenzo teaches computer literacy and keyboarding. He maintains good rapport with his students and a quiet classroom atmosphere. Mr. Lorenzo walks around the room to monitor the students' progress. He has successfully completed his Stull Bill objectives.

## SECTION III   COMPOSITE EVALUATION If marked "requires improvement" or "unsatisfactory" Performance Evaluation Addendum must be completed

| Unsatisfactory ☐ | Requires Improvement ☐ | Effective ☒ |
|---|---|---|

## SECTION IV   COMMENTS BY EVALUATEE (Evaluatee may also attach additional written response)

If additional comments are attached check here ☐

| EVALUATOR & SUPERVISOR | EVALUATEE | REVIEWER |
|---|---|---|
| Signature(s) | I certify that this report has been discussed with me. I understand my signature does not necessarily indicate agreement. | Signature(s) |
| Title: Vice Principal | | Title: Principal |
| Date: | Signature / Date 4/5/77 | Date: 4/5/77 |

# TAB 10

# VIRGIL LORENZO

| | |
|---|---|
| **From:** | "Virgil M. Lorenzo" <vmlorenzo@email.uophx.edu> |
| **To:** | "Banka, Edward" <edward.banka@pac.dodea.edu> |
| **Sent:** | Thursday, May 11, 2006 7:11 AM |
| **Subject:** | Re: Letter |

Mr. Banca,

I forgot to mention on my last Email that I also carry an Indiana license in Secondary School Administration and Supervision. This one is subject to renewal in a couple of years but my teaching license is for life. It is the same license I presented the first time I worked at DODEA in Heidelberg, Germany.

I see several open admin positions but I would like to be able to include the letter I asked of you earlier when I apply.

Respectfully,

Virgil

Virgil M. Lorenzo, Ed.D.
Faculty, University of Phoenix
vmlorenzo@email.phoenix.edu
virgillorenzo@hotmail.com
Tel & Fax 81 98 965 7813

----- Original Message -----
**From:** VIRGIL LORENZO
**To:** Banka, Edward
**Sent:** Thursday, May 11, 2006 2:00 AM
**Subject:** Letter

Mr. Banca,

Please recall our exchange of Emails last year concerning Mr. Roehl's evaluation that you deleted. Until its deletion, that evaluation was on my file for four years, in full view of principals that I wrote to and called attention to my EAS file. I am afraid that many of them are thinking the way you do, namely, that the evaluation was deleted because Mr. Roehl does not have the time to go back into his files but that there was something to it. As a result, I am still seeking placement in DODEA. There were two Spanish positions I was in consideration but lost. When asked via Email why I lost and how I may improve my chance the next time around, the principals chose not to respond. I feel that I am being quietly de-selected. The policy of hiding Mr. Roehl's evaluation from me while exposing it to principals lent itself to this quiet de-selection.

It is for this reason that I am once more requesting for a letter from you stating that Mr. Roehl's evaluation should never have been on my file. For one thing he could not support it. Then there's the fairness issue about the decision to hide his name from me for four years while his evaluation was in full view of school principals. That is clearly an erroneous policy, if not unlawful.

In addition to your letter, please inform me of what positions may be available in Okinawa or Guam that I qualify in. I recently completed two methods courses in elementary teaching: language arts and science. I am adding another methods course in science next month, this time at the high school level. These should give me by July 1 the 30 units that the standard in science calls for. Currently I am state certified in English and social studies and have 30 units in Spanish.

As always, I thank you for your kind attention.

Sincerely,

Virgil

5/11/2006

----- Original Message -----
From: Banka, Edward
To: 'Virgil M. Lorenzo'
Cc: Furukawa, Michelle
Sent: Monday, May 16, 2005 5:10 PM
Subject: RE: FrankRoehl's Evaluation

Mr. Lorenzo,

My apologies for not responding sooner to you. I spent the first week of May in Guam and last week spent two days administering panel interviews for a senior leadership position. I get over 100 emails a day and only by working a few 12 hour days and 8 hours on Sunday was I able to catch up.

I agree to permanently remove the recommendation from Mr. Roehl from your applicant file. However I do not agree to provide you with a statement that the evaluation should never have been put in your file. Mr. Roehl did not request that I remove his recommendation. While he did not produce any evidence of your employment under him, I am not sure that he had the time, or the inclination to spend a lot of time to research and respond. He is very busy and it's difficult to find the time for a task such as this. We ask our principals and administrators to step forward and provide these recommendations so that selecting officials can benefit from their past experiences with potential new teachers. We do not want to make the process of providing a recommendation onerous.

Mr. Roehl did remember you. Consequently, I do not agree that the recommendation was erroneously placed in your file. It was not intended for another employee or provided in error. However, given the information you provided in our meeting, and my sense of what is the fair and right thing to do, I decided that the recommendation should be removed.

Thanks.

Ed Banka

-----Original Message-----
From: Virgil M. Lorenzo [mailto:vmlorenzo@email.uophx.edu]
Sent: Monday, May 16, 2005 11:55 AM
To: edward.banka@pac.dodea.edu
Subject: Fw: FrankRoehl's Evaluation

Mr.Banka,

I sent you by Email and by Military Postal Service the letter below on May 9. One way or the other, please respond to it so I can bring closure to this unfortunate incident.

Thank you.

Virgil M. Lorenzo, Ed.D.
Faculty, University of Phoenix

----- Original Message -----
From: Virgil M. Lorenzo
To: Edward.banka@pac.dodea.edu
Sent: Monday, May 09, 2005 9:31 AM
Subject: FrankRoehl's Evaluation

PSC 559 BOX 5288, FPO AP 96377
May 8, 2005

Edward Banka
Director of Personnel
Okinawa District
Re: Frank Roehl Evaluation

Dear Mr. Banka,

I am writing to thank you for instructing Michelle to conditionally remove Frank Roehl's evaluation on my EAS file where he wrote NOT RECOMMENDED FOR REHIRE. On our phone conversation in February, you said that Roehl stated he had a vague recollection of my working under him as a substitute teacher and that I had a problem with classroom management. When I repeated what I told you in November at our first meeting, namely, that I never worked under Roehl, you agreed to delete his evaluation pending on Roehl producing evidence of my working under him.

It is now May and you have given Roehl ample time to produce the evidence he implied he had. If he has not presented evidence, it is now reasonable to request that you make the deletion of his evaluation permanent. I also request from you a statement to the effect that this evaluation should never have been put on my file. Since I did not work under him, I did not authorize DODDS to obtain his evaluation, as would have been the normal procedure.

This statement is important to me because I have called the attention of principals in Europe and Asia to my EAS file in my attempt to find placement in their schools. While Roehl's evaluation was visible to them it was not to me. I can almost hear them chuckle as I confidently narrated my accomplishments, not knowing that something on my file undermined all my claims. I would like to be able to tell them now that the evaluation from Roehl is permanently removed and that it should never have been entered onto my EAS file.

We are now approaching that time when school principals fill vacancies at their respective schools. Your reply affirming that Roehl's evaluation is now permanently deleted and your statement that it should not have been entered onto my file in the first place will go a long way in my attempt to find placement in their schools. Your kind attention is very much appreciated.

Respectfully yours,

Virgil M. Lorenzo, Ed.D.
Faculty, University of Phoenix

----- Original Message -----
From: Virgil M. Lorenzo
To: Banka, Edward
Sent: Tuesday, May 24, 2005 9:41 AM
Subject: Re: FrankRoehl's Evaluation

Mr. Banka,

Mr. Roehl has not replied to my request to admit that his evaluation was sent in error and I am wondering if you have his U.S. post address or another Email address.

Meanwhile, I have another question on procedures. You justified Personnel's acceptance of Roehl's evaluation since he claimed he was at one point my supervisor. Doesn't standard procedure require Personnel to post Roehl's name as one of my evaluators? Personnel did not and I could not inquire into the content of his evaluation. By failing to post Roehl's name as an evaluator, did Personnel err? If so, would this error be sufficient for you to make a statement that this evaluation was entered in error?

Virgil M. Lorenzo, Ed.D.
Faculty, University of Phoenix

TAB 11

# UNITED STATES DISTRICT COURT

Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900

W. Samuel Hamrick, Jr.
Clerk of Court

Phone: (619) 557-6348
Fax: (619) 702-9900

September 27, 2005

Virgil M. Lorenzo
PSC 559, Box 5288
FPO AP 96377

Dear Sir:

I am returning your complaint paperwork, you sent to the United States District Court in San Diego,

California.

It appears from your paperwork, that United States District Court of Guam would be the closest

District Court.

I am inclosing a pro per packet and local rules for the Southern District of Ca. The papers may

assist you in filing your complaint .

Your check in the amount of $250.00, will be return under a separate cover.


Sincerely

W. Samuel Hamrick, Clerk

by: M Stottlemyer, Deputy Clerk

PSC 559 BOX 5288
FPO AP 96377
September 22, 2005

Court's Office
U.S. District Court
940 Front St, Room 4290
San Diego, CA 92101-8900

Re: Petition

Dear Sir:

The Equal Employment Opportunity Commission has instructed me in the letter enclosed to seek assistance from the Court Clerk to find me a lawyer who would file my case. My complaint is two fold:

I applied for a Spanish teaching position in one of the Department of Defense Dependent schools in Japan in June 2000 by sending the required forms to headquarters and a copy to the hiring manager, the school principal. I, an Asian male, taught the subject in a DOD school in Germany and the principal acknowledged knowing this. A position became available in December and was given to a white woman who declared on her application that she was not qualified to teach high school Spanish.

The second part of my complaint is that one DODDS manager, who never was my supervisor, put on my application file the evaluation: NOT RECOMMENDED FOR REHIRE. The names of other evaluators were declared but his not and I did not know about his evaluation until I filed a complaint for not getting the Spanish position. Meanwhile his evaluation was made available to all hiring managers. When challenged to prove that I worked under him, all he could say was that he had a vague memory of it. The evaluation was conditionally removed four months ago.

I have renewed and updated my application with DODDS since June 2000 but to date could not get in. I have been working odd jobs and without a steady income, I cannot afford a lawyer. Would the court please appoint me one?

Respectfully yours,

Virgil M. Lorenzo

Phone: 011 81 98 965 7813
Email: virgillorenzo@hotmail.com